UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10cr20896-Lenard

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

QUARTAVIOUS DAVIS,

    Defendant.
_____/

**CORRECTED
DEFENDANT DAVIS'
MOTION TO SUPPRESS ELECTRONIC
LOCATION EVIDENCE[1]**

Defendant QUARTAVIOUS DAVIS moves to suppress all electronic location evidence in this case which the government obtained without a warrant and which is intended to be used at trial by the government to establish the defendant's physical location during significant periods of time. This motion is specially directed at the following:[2]

---

[1] This motion corrects DE 272 for typographical and stylistic errors. It is important to note that the last sentence of the section titled Facts Supporting Suppression now reads: "However, discovery provided by the government does *not* indicate the degree of accuracy which the cell phone location can be established." (Emphasized portion represents the correction).

[2] This appears to be the only evidence disclosed by the prosecution which is described by this motion.

      wire communication service provider (hereafter "provider") records from August 1, 2011, through October 6, 2010, for telephone number (561) 767-5642.

## FACTS SUPPORTING SUPPRESSION

Starting on August 7, 2010, and continuing through October 1, 2010, there were seven armed robberies of commercial establishments in South Florida.[3] For purposes of this motion, it is accepted that by February 2, 2011, the Federal Bureau of Alcohol, Tobacco, and Firearms (ATF) had probable cause to believe:

    1)    Willie Smith, Jamarquis Reid, Jahmal Martin, Michael Martin, Sylvester Fisher, and the defendant were involved in the robberies in various combinations.[4]

    2)    The cell phone numbers used at the time of the robberies by Reid, Smith, Michael Martin, and the defendant were identified, with the defendant's number being (561) 767-5642.

No later than February 2, 2011, the government submitted an unsworn "Application for Stored Cell Site Information" to a magistrate judge.[5] (DE 268-1). The application did not request issuance of a warrant, but an "order," directed at various providers to submit,

---

[3] These are the robberies charged in this case.

[4] Reid and Smith are half brothers. Jahmal Martin and Michael Martin are not related.

[5] The application is undated.

*inter alia,* "stored telephone . . . records, and corresponding geographic location data (cell site)" for the defendant's telephone number from the period beginning August 1, 2010, and continuing to October 6, 2010. The application indicated that it was made pursuant to 18 U.S.C. §2703(c) and (d). On February 2, 2011, Magistrate Judge McAliley entered an order which directed the requested production. (DE 266-1)

The government subsequently obtained, pursuant to the magistrate order, records and information from which it can establish the defendant's cell phone geographic location at key times during the robberies. However, discovery provided by the government does *not* indicate the degree of accuracy for which the cell phone location can be established.[6]

**MEMORANDUM OF LAW**

Just days ago the Supreme Court decided *United States v. Jones,* 565 U.S. ___ (2012) (Case No. 10-1259, decided January 23, 2012), and started what is surely to be a heated debate regarding the Fourth Amendment and modern personal electronic devices which

---

[6]The government has provided the defense with trial exhibits–maps–which show the precise "cell tower" locations correlating to the defendant's calls. The maps also reflect robbery locations and the residence locations of the defendant and former co-defendants. The defense understands that the provider records and information allows the government to show the direction of a cell phone's location relative to the cell tower, so the prosecutor will be able to place the cell phone user very close to a robbery location–likely a measurement in yards–at critical times during the crimes.

The application and order did not limit the "geographic location data" sought. Accordingly, if GPS data was available it should have been produced. However, it is the defense understanding that GPS data was not produced.

3

create geographic location information stored by service providers. The *Jones* case specifically addressed GPS tracking devices attached by law enforcement to a person's automobile, but five justices clearly saw and announced their concerns that core privacy interests protected by the Fourth Amendment were at issue.

A five member opinion authored by Justice Scalia–but punctuated by an important concurrence by Justice Sotomayor–resolved the case on the basis of trespass, a Fourth Amendment approach tied to early American history.[7] The four member concurrence saw the case more broadly. Justice Alito, who authored that opinion, declared:

> I would analyze the question presented in this case by asking whether respondent's reasonable expectations of privacy were violated by the long-term monitoring of the movements of the vehicle he drove.

Justice Alito answered by first considering that even under historical precedents trespass analysis provides incomplete Fourth Amendment protection against unreasonable searches and seizures. Concurring Slip Opinion, at 2-6. Justice Alito then considered difficulties with the application of trespass analysis to electronic tracking devices, including the problem of law enforcement simply sending an electronic signal to activate a manufacturer-installed device in a suspect's automobile. Concurring Opinion, at 9-10. Then, considering the emergence of very recent technology, Justice Alito noted:

---

[7]"The Government physically occupied private property for the purpose of obtaining information. We have no doubt that such a physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Jones,* slip opinion at 4.

> Perhaps most significant, cell phones and other wireless devices now permit wireless carriers to track and record the location of users—and as of June 2011, it has been reported, there were more than 322 million wireless devices in use in the United States . . . . The availability and use of these and other new devices will continue to shape the average person's expectations about the privacy of his or her daily movements.

Concurring Slip Opinion, at 11-12 (footnote omitted). Returning to the facts of the case, Justice Alito easily concluded that "long term" or "lengthy monitoring" of an accused's location using a GPS device impinged upon expectation of privacy and was an impermissible Fourth Amendment search. Concurring Opinion, at 12-14.

Justice Alito's four member concurrence was clear enough, but it is most significant that Justice Sotomayor fully adopted the legal analysis which that opinion expressed.[8] Sotomayor, J, Concurring, at 3. In fact, Justice Sotomayor declared the need for a degree of privacy protection not even reached by Justice Alito:

> I would ask whether people reasonably expect that their movements will be recorded and aggregated in a manner that enables the Government to ascertain, more or less at will, their political and religious beliefs, sexual habits, and so on.

\* \* \* \*

---

[8] Justice Sotomayor concurred with the four member "trespass" opinion only because she believed it provided an adequate and more limited rationale. Sotomayor, J., concurring, at 6.

5

> More fundamentally, it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. *E.g., Smith [v. Maryland]*, 442 U. S., at 742; *United States v. Miller*, 425 U. S. 435, 443 (1976). This approach is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks. People disclose the phone numbers that they dial or text to their cellular providers; the URLs that they visit and the e-mail addresses with which they correspond to their Internet service providers; and the books, groceries, and medications they purchase to online retailers.

Sotomayor, J, concurring, at 4-5.

A basic numerical analysis of *Jones* reflects that at least five justices believe that long term location tracking by electronic means constitute a Fourth Amendment search requiring a finding of probable cause and a warrant.[9] Indeed, the defendant is unaware of any Eleventh Circuit case which holds to the contrary.

Accordingly, the issue for this Court to decide is whether the seizure of long term location tracking information from third parties is constitutionally protected. Significantly, the Eleventh Circuit has already recognized the tenuous nature of existing third party jurisprudence when analyzing privacy expectations in our modern electronic world. In *Rehberg v. Paulk*, 611 F.3d 828 (11th Cir. 2010), the court was confronted with the question

---

[9] In fact, the defendant sees nothing in Justice Scalia's opinion which says anything to the contrary.

of whether there was qualified immunity for issuance of a law enforcement subpoena–as opposed to a warrant supported by probable cause–which was used to obtain internet service provider records revealing various email information, including message content. Specifically considering the sensitivity of the information obtained, and rather than simply dismissing the claim on the basis of lost expectation of privacy from relinquishment of information to a third party, the Eleventh Circuit avoided the question and held that there was qualified immunity for issuing the subpoena.

Again, in what can also be seen as reluctance to hastily apply past third party case law to modern circumstances, the Eleventh Circuit has considered a Fourth Amendment claim against 18 U.S.C. §2703, the same statute used by the government in this case. Making it's decision non-precedential, in *United States v. Beckett* (11th Cir. 2010) (Case No. 09-10579, unpublished, decided March 9, 2010), the Eleventh Circuit affirmed on the basis of *Smith v. Maryland* (no Fourth Amendment seizure when obtaining pen register data from telephone company). However, the opinion carefully noted that the accused "could not have had a reasonable expectation of privacy in the information that was obtained from the ISPs and the phone companies. *The investigators did not recover any information related to content.*" (Emphasis added).[10]

---

[10] It is noteworthy that in enacting 18 U.S.C. §2703 Congress apparently recognized that issuance of an "order" upon the government's "application" was a seizure. The statute itself has a Fourth Amendment tone and employs a familiar but less than probable cause standard by requiring:

(continued...)

This Court should consider, just like Justice Sotomayor, that prolonged location tracking information is content *rich*.[11] In this case, the more than two month *government* data aggregation by warrantless recovery–a search and seizure in the Fourth Amendment sense–necessarily violated a privacy interest which the constitution protects. The location evidence which the government obtained must be suppressed.

---

[10](...continued)
> *specific and articulable* facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.

18 U.S.C. §2703(d) (emphasis added).

It is also of some note that the Third Circuit has considered 18 U.S.C. §2703 in the context of cell phone location data. *See, In re Application for Order*, 620 F.3d 304 (3rd Cir. 2010) (Upholding statute but requiring probable cause showing for obtaining data reflecting movement within a Fourth Amendment protected area, such as a home).

[11]Justice Sotomayor cited *People v. Weaver*, 12 N. Y. 3d 433, 441–442, 909 N. E. 2d 1195, 1199 (2009) which stated: "Disclosed in [GPS] data . . . will be trips the indisputably private nature of which takes little imagination to conjure: trips to the psychiatrist, the plastic surgeon, the abortion clinic, the AIDS treatment center, the strip club, the criminal defense attorney, the by-the-hour motel, the union meeting, the mosque, synagogue or church, the gay bar and on and on."

## CERTIFICATE OF SERVICE

I certify that on January 31, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, for uploading and service by electronic notice to counsel and parties authorized to receive electronically Notices of Electronic Filing.

        Respectfully Submitted,

        Michael Zelman
        Counsel for Defendant Davis
        19 W. Flagler Street, Suite 407
        Miami, Florida 33130
        Tel. Number: (305) 358-1600


        _S/ Michael Zelman_
        Michael Zelman (Fla. Bar No. 241733)