1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case 10-20896-CR-GOLD

*THE UNITED STATES OF AMERICA,*

        Plaintiff,

  vs.

*QUARTAVIOUS DAVIS,*

        Defendant.

**COURTROOM 11-1**

**MIAMI, FLORIDA**

**JANUARY 31, 2012**

(Pages 1 - 59)

10
11

**MOTION TO SUPPRESS**
**BEFORE THE HONORABLE ALAN S. GOLD**
**SENIOR UNITED STATES DISTRICT JUDGE**

12
13

APPEARANCES:

14
15
16

**FOR THE GOVERNMENT:**    **ROY K. ALTMAN, A.U.S.A.**
                        **AMANDA PERWIN, A.U.S.A.**
                        99 N.E. 4th Street
                        Miami, FL  33132        305.961.9435

17
18
19

**FOR THE DEFENDANT:**    **MICHAEL ZELMAN, ESQ.**
                        201 Alhambra Circle, Suite 711
                        Coral Gables, FL 33134    305.358.1600
                                        (Fax) 305.442.0099

20
21
22
23

**REPORTED BY:**    **JOSEPH A. MILLIKAN, RPR-CM-NSC-FCRR**
                        *Official United States Court Reporter*
                        *Federally Certified Realtime Reporter*
                        Wilkie D. Ferguson, Jr., United States Courthouse
                        400 North Miami Avenue, Suite 11-1
                        Miami, FL  33128        305.523.5588
                                        (Fax) 305.523.5589
                        josephamillikan@gmail.com

24
25

1

## TABLE OF CONTENTS

2

Page

3   Reporter's Certificate ................................... 53

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Motion to Suppress

| | | |
|---|---|---|
| 16:03:56 | 1 | **THE COURT SECURITY OFFICER:** All rise. |
| 16:04:00 | 2 | **THE COURT:** Thank you.  Please be seated. |
| 16:04:08 | 3 | **THE COURT SECURITY OFFICER:** I called for the |
| 16:04:09 | 4 | defendant.  He is not here yet. |
| 16:04:11 | 5 | **THE COURT:** I could use a minute. |
| 16:04:20 | 6 | [The defendant enters the courtroom at 4:04 p.m.] |
| 16:04:59 | 7 | **THE COURT:** All right.  We are reconvened for the |
| 16:05:06 | 8 | purpose of hearing defendant *Davis*'s corrected motion to |
| 16:05:13 | 9 | suppress electronic location evidence. |
| 16:05:19 | 10 | So, Mr. Zelman, if you would like to stay seated and |
| 16:05:21 | 11 | just speak in the microphone, that's fine, whatever is |
| 16:05:24 | 12 | comfortable for you. |
| 16:05:25 | 13 | **MR. ZELMAN:** Thank you. |
| 16:05:57 | 14 | **THE COURT:** Excuse me just a second.  Oh, there it is. |
| 16:06:03 | 15 | All right.  We're ready.  Do you wish to proceed, sir? |
| 16:06:20 | 16 | **MR. ZELMAN:** I'm sorry, Judge.  I didn't realize that |
| 16:06:22 | 17 | you wanted me to just start.  I am happy to do so. |
| 16:06:28 | 18 | I think the starting point is a recognition that the |
| 16:06:33 | 19 | *Jones* case gave a new meaning to expectation of privacy, not a |
| 16:06:45 | 20 | new meaning that is a diversion of prior case law, but is a |
| 16:06:52 | 21 | logical evolution of prior case law. |
| 16:06:55 | 22 | I think, although we all had known that there are two |
| 16:07:00 | 23 | ways of analyzing Fourth Amendment cases, one is the traditional |
| 16:07:05 | 24 | trespass notion of property interests and the second is the *Katz* |
| 16:07:11 | 25 | expectation of privacy concept which, with respect to electronic |

| | | |
|---|---|---|
| 16:07:19 | 1 | monitoring, had not experienced much Supreme Court jurisprudence |
| 16:07:26 | 2 | in the years since the officers in *Katz* had driven some kind of |
| 16:07:32 | 3 | mechanical or electrical device into the wires leading into a |
| 16:07:37 | 4 | phone booth. |
| 16:07:38 | 5 | But what is so important about White -- excuse me -- |
| 16:07:43 | 6 | about *Jones* is that five Justices clearly now recognize that the |
| 16:07:53 | 7 | privacy interests implicated by tracking devices, electronic |
| 16:07:59 | 8 | tracking devices, which are so prevalent right now and have |
| 16:08:05 | 9 | become so, so suddenly, that there is a new recognition that |
| 16:08:11 | 10 | these privacy interests that are affected must be considered and |
| 16:08:20 | 11 | addressed in now current Fourth Amendment jurisprudence, and |
| 16:08:25 | 12 | that is what I think is so important about the *Jones* case. |
| 16:08:28 | 13 | Certainly prior to last week, I just didn't see this |
| 16:08:33 | 14 | issue as being something that could be raised, but I think it is |
| 16:08:37 | 15 | impossible not to read Justice Sotomayor's concurrence and |
| 16:08:46 | 16 | Justice Alito's opinions without realizing that something is |
| 16:08:50 | 17 | going on here. |
| 16:08:52 | 18 | We are going to have in the coming years clear |
| 16:08:56 | 19 | development of this law, this new Fourth Amendment law that |
| 16:08:59 | 20 | *Jones* established. |
| 16:09:00 | 21 | I think the Court is in a difficult position being, as |
| 16:09:04 | 22 | far as I can tell, the first Court in this district, and perhaps |
| 16:09:09 | 23 | the first Court in many districts, to now apply *Jones* -- and |
| 16:09:12 | 24 | that's what I'm asking the Court to do -- and that's why I think |
| 16:09:17 | 25 | that the, I don't know, the dozen-and-a-half, maybe, cases that |

16:09:22   1   Mr. Altman has provided the Court are for the most part

16:09:26   2   irrelevant.

16:09:27   3            The only case of any real significance is the U.S.

16:09:31   4   Supreme Court *Davis* case, no relation to my client, which deals

16:09:35   5   with the concept of good faith in application of the

16:09:40   6   exclusionary rule once there is a violation of the Fourth

16:09:45   7   Amendment.

16:09:47   8            In our case, I think we have a violation of Fourth

16:09:50   9   Amendment that is rather easily demonstrated.  Perhaps there is

16:09:54  10   a need for some testimony that the Court may see.  I'm not sure

16:09:57  11   what Mr. Altman's position is going to be on the facts.  I'm not

16:10:02  12   sure how he views the privacy interests that Mr. *Davis*, my

16:10:08  13   client, has in the physical records that were obtained from the

16:10:15  14   service provider in this case.

16:10:19  15            We are, of course, prepared to go forward with evidence

16:10:21  16   if necessary, but assuming that evidence is before the Court and

16:10:26  17   the Court recognizes that Mr. *Davis* does have a privacy interest

16:10:35  18   in the tracking information which the Government obtained from

16:10:38  19   the service provider, then the only relevant argument I think

16:10:42  20   that Mr. Altman's 20 or so cases raise is whether or not there

16:10:47  21   is some kind of good faith exception which now prevents

16:10:54  22   application of the exclusionary rule, and I am prepared to

16:10:57  23   address that, too.

16:10:59  24            Just in a nutshell, as the Supreme Court recognized in

16:11:03  25   the *Davis* case, the good faith exception does not apply unless

| | | |
|---|---|---|
| 16:11:14 | 1 | there is a confused state of Fourth Amendment law, uncertainty |
| 16:11:20 | 2 | in the application of Fourth Amendment law, so that a law |
| 16:11:23 | 3 | enforcement officer could resort to one appellate decision and |
| 16:11:29 | 4 | not realize that there is another that more aptly describes what |
| 16:11:33 | 5 | he should and should not do or could and could not do. |
| 16:11:37 | 6 | In our case, as I think my motion makes clear, there |
| 16:11:43 | 7 | was no prior precedent.  There was no authority which sanctioned |
| 16:11:49 | 8 | what the Government did in this case.  The Eleventh Circuit has |
| 16:11:53 | 9 | avoided the issue.  Maybe some other -- |
| 16:11:58 | 10 | THE COURT:  You did have a congressional act. |
| 16:12:01 | 11 | MR. ZELMAN:  Yes, that is true, Judge. |
| 16:12:04 | 12 | THE COURT:  So what's the effect of that in terms of |
| 16:12:08 | 13 | your position? |
| 16:12:09 | 14 | MR. ZELMAN:  Well, I think that is problematic to my |
| 16:12:13 | 15 | position.  I recognize that.  I don't know that I'm fully |
| 16:12:17 | 16 | prepared to address it, but the way I see it is that act |
| 16:12:22 | 17 | contemplated, as the Third Circuit's decision recognized, some |
| 16:12:32 | 18 | usage of a court order without probable cause, but also some |
| 16:12:36 | 19 | usage with probable cause.  That is the Third Circuit's |
| 16:12:40 | 20 | decision.  Although I don't completely agree with everything in |
| 16:12:44 | 21 | that Third, it is cited in my memorandum, Judge, my motion as |
| 16:12:47 | 22 | well. |
| 16:12:48 | 23 | Although I don't agree with everything in the Third |
| 16:12:50 | 24 | Circuit's analysis, it does recognize that the statute alone |
| 16:12:55 | 25 | cannot be relied upon for obtaining -- and I'm trying to think |

| | | |
|---|---|---|
| 16:13:03 | 1 | of the language that the Third Circuit used.  It never was very |
| 16:13:06 | 2 | clear in my mind because I don't think they gave clear guidance. |
| 16:13:11 | 3 | They simply said that, yes, routine numeric information |
| 16:13:15 | 4 | dealing with calls placed, numbers called, that doesn't require |
| 16:13:21 | 5 | probable cause.  That is more akin to what has traditionally |
| 16:13:26 | 6 | been obtained through use of pen-register devices, but they did |
| 16:13:31 | 7 | speak about zones of privacy or areas of privacy. |
| 16:13:34 | 8 | I am not sure of the language that the Third Circuit |
| 16:13:37 | 9 | used with respect to obtaining location information in or about |
| 16:13:43 | 10 | an individual's home, and that's where they drew the line and |
| 16:13:46 | 11 | said probable cause is required for that type of data that is |
| 16:13:50 | 12 | obtained. |
| 16:13:51 | 13 | I don't necessarily agree with that analysis.  I think |
| 16:13:54 | 14 | that puts too much emphasis on the place rather than the nature |
| 16:13:59 | 15 | of the data that is being obtained. |
| 16:14:03 | 16 | As Justice Alito's concurring opinion in *Jones* makes |
| 16:14:10 | 17 | clear, Justice Sotomayor's concurring opinion made clear, they |
| 16:14:17 | 18 | are concerned about this overall problem of the Government |
| 16:14:23 | 19 | having easy accessible tracking information which tells where a |
| 16:14:29 | 20 | person is 24 hours a day over a lengthy period of time that is |
| 16:14:35 | 21 | significant, such that -- and as Justice Sotomayor stressed by |
| 16:14:43 | 22 | citing the New York case -- again, it is in my memorandum -- you |
| 16:14:51 | 23 | can tell everything you need to know about a person by following |
| 16:14:53 | 24 | them. |
| 16:14:54 | 25 | If you track them long enough, you will learn |

| | | |
|---|---|---|
| 16:14:56 | 1 | everywhere they go and really what they are doing, what they are |
| 16:15:01 | 2 | thinking, because you know where they go. |
| 16:15:04 | 3 | The examples that were given in the Justice Sotomayor |
| 16:15:09 | 4 | concurring opinion were the abortion clinic, the AIDS clinic, |
| 16:15:16 | 5 | the criminal defense lawyer office, the short term one-hour |
| 16:15:25 | 6 | hotel.  All of those kinds of things are inevitable when you |
| 16:15:31 | 7 | allow wholesale aggregation of location data and that's the |
| 16:15:36 | 8 | danger that five Justices sought to address by *Jones*. |
| 16:15:45 | 9 | **THE COURT:**  Why don't we start this way because I think |
| 16:15:47 | 10 | it would help focus the argument some. |
| 16:15:51 | 11 | Since I haven't taken testimony on this and a lot is |
| 16:15:59 | 12 | going to come out through the trial, what I think would be |
| 16:16:01 | 13 | helpful at this juncture would be here, first, before argument, |
| 16:16:07 | 14 | a proffer of the facts as you see them developing in the |
| 16:16:13 | 15 | Government's case in chief. |
| 16:16:14 | 16 | **MR. ALTMAN:**  Yes, sir.  The facts will be relatively |
| 16:16:21 | 17 | straightforward.  On the days of their arrests, Willie Smith and |
| 16:16:25 | 18 | Jahmal Martin, who are two of the defendant's codefendants in |
| 16:16:29 | 19 | this case, were searched incident to their arrests and they had |
| 16:16:32 | 20 | cell phones on their persons. |
| 16:16:34 | 21 | A search of both of their cell phones revealed not only |
| 16:16:39 | 22 | each other's numbers but also the phone number of someone |
| 16:16:42 | 23 | referred to as Quat.  Everyone that knows Mr. *Davis*, Quartavious |
| 16:16:49 | 24 | *Davis*, the defendant in this case, refers to him as Quat, and |
| 16:16:54 | 25 | Willie Smith has said that Quat refers to the defendant. |

| | | |
|---|---|---|
| 16:16:58 | 1 | That number in both Mr. Martin's phone and in |
| 16:17:01 | 2 | Mr. Smith's phone for Quat was the same number, which when shown |
| 16:17:06 | 3 | to Mr. Jamarquis Reid, who is a third codefendant in this case, |
| 16:17:10 | 4 | Mr. Reid agreed that that is the number that he would call Quat |
| 16:17:14 | 5 | at, which is this defendant, Mr. *Davis*. |
| 16:17:17 | 6 | At that time obviously, Your Honor, Mr. Reid and |
| 16:17:19 | 7 | Mr. Smith and Mr. Martin had not pled guilty, and so what I did |
| 16:17:24 | 8 | was, as the Court has seen in my filing, pursuant to 18 USC |
| 16:17:31 | 9 | § 2703, I filed an application with the on-duty Magistrate at |
| 16:17:37 | 10 | that time, who I believe to be Judge McAliley if I remember |
| 16:17:40 | 11 | correctly, as I have done in many other cases and, frankly, as |
| 16:17:44 | 12 | every AUSA in this district does, relying on the provisions of |
| 16:17:48 | 13 | 2703. |
| 16:17:50 | 14 | What that order is, as the Court has seen that Judge |
| 16:17:54 | 15 | McAliley signed, is it authorizes really two things.  One is |
| 16:18:00 | 16 | what they call a pen-register or a trap and trace, and the |
| 16:18:04 | 17 | second is what the cell phone providers call historical cell |
| 16:18:07 | 18 | site data. |
| 16:18:09 | 19 | If I may, Judge, for just a moment distinguish between |
| 16:18:11 | 20 | a third kind of cell phone information that is not provided, |
| 16:18:14 | 21 | which can be provided under the strictures of 2703, that is, |
| 16:18:18 | 22 | realtime cell site data which is what we in law enforcement call |
| 16:18:25 | 23 | a superpen.  That was not applied for and it was not given to me |
| 16:18:29 | 24 | based on the order that I submitted. |
| 16:18:32 | 25 | As Mr. Zelman has alluded, 2703 does have a probable |

| 16:18:37 | 1 | cause provision and that probable cause provision applies only |
| 16:18:41 | 2 | to an application for and authorization for realtime cell site |
| 16:18:46 | 3 | information which is not what we have here. |
| 16:18:47 | 4 | **THE COURT:**  Well, just so we are clear about that, can |
| 16:18:51 | 5 | you go into the difference between realtime cell site |
| 16:18:56 | 6 | information and the other two types? |
| 16:18:58 | 7 | **MR. ALTMAN:**  Yes, sir. |
| 16:18:58 | 8 | So the two things that I received were what's called a |
| 16:19:02 | 9 | pen-register and trap and trace.  They are called that, frankly, |
| 16:19:05 | 10 | because from the 1920s there used to be a device, obviously, on |
| 16:19:08 | 11 | the telegraph that was called a pen-register. |
| 16:19:10 | 12 | A pen-register and trap and trace gives what the cell |
| 16:19:14 | 13 | phone provider calls signals, pulse to and pulse from a |
| 16:19:18 | 14 | particular facility, which in English means phone number and |
| 16:19:21 | 15 | date and time of calls, both incoming and outgoing from a |
| 16:19:26 | 16 | particular phone. |
| 16:19:29 | 17 | The Eleventh Circuit case, Beckett, that Mr. Zelman |
| 16:19:32 | 18 | cited in his motion to suppress dealt with that part of 2703 and |
| 16:19:37 | 19 | the Eleventh Circuit has, of course, said that a defendant has |
| 16:19:40 | 20 | no reasonable expectation of privacy in pen-registers and trap |
| 16:19:44 | 21 | and traces, which is just numbers in, numbers out. |
| 16:19:47 | 22 | The second kind of information that we received |
| 16:19:49 | 23 | pursuant to the 2703 order that I filed is what we call |
| 16:19:54 | 24 | historical cell site information.  The way that works, Judge, is |
| 16:19:57 | 25 | pretty simple. |

16:19:59  1       In order for a person to make a call or receive a call,

16:20:03  2  a cellular phone must actually make the call to the nearest cell

16:20:07  3  phone tower.  That cell phone tower then places the call to the

16:20:12  4  nearest cell phone tower to the receiving number and that second

16:20:17  5  cell phone tower then contacts the receiving number.  That

16:20:20  6  doesn't appear in your phone records, but that is what is

16:20:23  7  actually happening.

16:20:24  8       So, in the regular course in this case, the cell phone

16:20:27  9  provider is MetroPCS.  MetroPCS's business, MetroPCS records,

16:20:31 10  obviously, the location of the cell phone towers -- well, let me

16:20:36 11  back up.  That is not exactly right.

16:20:38 12       It records the cell phone tower that you bounce off of

16:20:41 13  for each and every particular call.  So as an example if I were

16:20:46 14  here in court today and I made a phone call to my father, that

16:20:51 15  phone call would be registered in my phone records.  It would

16:20:55 16  say the time.  It would say the date.  It would say who I

16:20:58 17  called.  It would say the duration of the call.  Then it would

16:21:01 18  say whether there was any special feature, for instance, whether

16:21:05 19  there was a three-way, a conference, or a voice mail.

16:21:08 20       Finally, under 2703, the phone record would provide me

16:21:11 21  with which tower I used to make that call and so presumably it

16:21:16 22  would be some tower here close to the courthouse.

16:21:19 23       So, that tower would be recorded and the way that we

16:21:23 24  then are able to map out the location of a particular phone at a

16:21:27 25  particular time is that we then have a glossary that is provided

| 16:21:32 | 1 | to us by MetroPCS that is essentially an index.  It has all of |
| 16:21:36 | 2 | the numbers of all the towers in Miami-Dade County. |
| 16:21:40 | 3 | Say the tower I used here next to the courthouse was |
| 16:21:42 | 4 | tower 500.  So I would be able to go to the glossary and see |
| 16:21:47 | 5 | tower 500 is a tower at Northeast 1st Avenue and North Miami, or |
| 16:21:52 | 6 | something like that, and Flagler. |
| 16:21:55 | 7 | But all of that, Judge, is done historically which is |
| 16:21:58 | 8 | to say that when I applied for this order on February 2nd, 2011, |
| 16:22:04 | 9 | I was asking for cell site data from the defendant between the |
| 16:22:09 | 10 | dates of August and October 2010.  So, the significance of that, |
| 16:22:15 | 11 | of course, is that the defendant was not being tracked in |
| 16:22:18 | 12 | realtime as the defendant was in *Jones*. |
| 16:22:21 | 13 | In response to your question, Your Honor, that's what |
| 16:22:24 | 14 | distinguishes the second from the third aspect of 2703, the |
| 16:22:29 | 15 | historical cell site from the realtime cell site.  So, 2703 |
| 16:22:33 | 16 | provides that if you want realtime cell site, as I said, what we |
| 16:22:37 | 17 | call a superpen, you need to show probable cause and an |
| 16:22:41 | 18 | affidavit from a detective. |
| 16:22:43 | 19 | The reality, Judge, in this district, and I'm not sure |
| 16:22:47 | 20 | if the Court is aware, so I ask your indulgence, is when I first |
| 16:22:50 | 21 | started, the historical cell sites require just the application |
| 16:22:55 | 22 | that I have from every Magistrate in the district and that's |
| 16:22:58 | 23 | true, from what I understand, of every district in the United |
| 16:23:00 | 24 | States, and that remains true today. |
| 16:23:03 | 25 | With realtime cell site, there is a discussion among |

16:23:08   1   Magistrate Judges around the country and even in this district.

16:23:11   2   In this district, by my count, the Magistrate's are split half

16:23:14   3   and half.  Some require just a showing of probable cause from

16:23:18   4   the AUSA.  Some require a full-on search warrant, and the issue

16:23:22   5   has not properly been resolved.  But in any event, Your Honor,

16:23:24   6   that is really beside the point because what we have in this

16:23:27   7   case is not that.  It is historical cell site, not realtime

16:23:32   8   tracking of the defendant.

16:23:34   9       So I hope that helps the Court to understand what I am

16:23:38  10   sure the Court has heard many times before.  The one thing I

16:23:42  11   will say about historical cell site that was alluded to in

16:23:45  12   Mr. Zelman's motion is that it is not GPS coordinates and it is

16:23:51  13   not precise in the sense that it was in *Jones*.  I think the

16:23:54  14   record in *Jones* showed that the GPS tracker -- and frankly, my

16:23:59  15   experience with GPS trackers is that they can tell you where a

16:24:02  16   particular car is at a very specific place in time.

16:24:05  17       So, for instance, as Mr. Zelman said, if a particular

16:24:09  18   person was going to the supermarket or to a motel, I would be

16:24:13  19   able to see that with a GPS tracker.  That is not necessarily

16:24:19  20   true here.  The cell records that are provided, as I said, are

16:24:24  21   for the nearest tower and the MetroPCS rep will testify at trial

16:24:29  22   that sometimes it is not even the nearest tower.

16:24:32  23       Sometimes the nearest tower is congested with too much

16:24:36  24   traffic because it is an urban area, say, and so the call will

16:24:40  25   be rerouted to a slightly farther away tower that is available.

16:24:45  1      So I can't give you an exact distance from the location

16:24:51  2  of the actual person using the cell phone, but what I can tell

16:24:53  3  you is that it can be that you are right up on the tower, of

16:24:56  4  course.

16:24:57  5      I can be making a call and if I am in this building and

16:25:00  6  there is a tower on top of the roof in this building, then

16:25:03  7  obviously, assuming that tower was available, I would be using

16:25:07  8  that tower and I would be right here in this building, but it

16:25:10  9  could also be that I am a couple of blocks away, maybe a block

16:25:13  10  away, and this is the nearest tower and it is also available,

16:25:17  11  and so I would be using that, but I would be a block away.

16:25:19  12      So it doesn't give you the sort of specific

16:25:22  13  triangulation that the GPS tracker does.

16:25:28  14      THE COURT:  Let's go back to the arrest of the

16:25:29  15  codefendant.  We are talking about the cell phone of one or two

16:25:35  16  of the codefendants?

16:25:37  17      MR. ALTMAN:  Two, Your Honor.

16:25:39  18      THE COURT:  So, Mr. *Davis*'s information was shown as

16:25:49  19  being received on the cell phones of two of the individuals?

16:25:55  20      MR. ALTMAN:  Not just that.  It was also -- his number

16:25:58  21  was also saved in their contact list.

16:26:00  22      THE COURT:  All right.  So let me address that.  The

16:26:04  23  number was saved in the contact list under the name of Quat?

16:26:11  24      MR. ALTMAN:  Q-u-a-t, which is the name that people use

16:26:15  25  for him.

| | | |
|---|---|---|
| 16:26:16 | 1 | **THE COURT:**  Quat? |
| 16:26:16 | 2 | **MR. ALTMAN:**  That's correct. |
| 16:26:18 | 3 | **THE COURT:**  And the cell phone also showed -- well, |
| 16:26:24 | 4 | what other information did the cell phone or -- there were two |
| 16:26:29 | 5 | cell phones, right? |
| 16:26:30 | 6 | **MR. ALTMAN:**  Correct. |
| 16:26:30 | 7 | **THE COURT:**  What other information did the two phones |
| 16:26:34 | 8 | show? |
| 16:26:35 | 9 | **MR. ALTMAN:**  Well, there were calls to and from Quat on |
| 16:26:38 | 10 | Willie Smith's cell phone, and I'm not sure if there were calls |
| 16:26:43 | 11 | to and from Quat on Jahmal Martin's cell phone, but I believe |
| 16:26:48 | 12 | that there were. |
| 16:26:51 | 13 | **THE COURT:**  Well, the contact list included other names |
| 16:26:55 | 14 | than Quat, right? |
| 16:26:55 | 15 | **MR. ALTMAN:**  Oh, yeah, lots of names, Your Honor. |
| 16:26:58 | 16 | **THE COURT:**  Okay.  So, it also -- the cell phone |
| 16:27:05 | 17 | information also showed a variety of calls being made and |
| 16:27:09 | 18 | received -- |
| 16:27:09 | 19 | **MR. ALTMAN:**  That's correct. |
| 16:27:10 | 20 | **THE COURT:**  -- from various individuals. |
| 16:27:12 | 21 | **MR. ALTMAN:**  Yes, sir. |
| 16:27:13 | 22 | **THE COURT:**  So at that point, how do you move from that |
| 16:27:20 | 23 | set of facts before there was any guilty plea and statements by |
| 16:27:25 | 24 | Smith and Martin to your application? |
| 16:27:30 | 25 | **MR. ALTMAN:**  I debriefed both Smith and Martin before |

| | | |
|---|---|---|
| 16:27:34 | 1 | they pled guilty, Your Honor. |
| 16:27:36 | 2 | THE COURT: Okay. So let me go back to the chain of |
| 16:27:44 | 3 | facts here. You acquired the cell phones. You saw the contact |
| 16:27:51 | 4 | list. You saw the calls made and received. Was there any other |
| 16:27:58 | 5 | step taken before you debriefed the two relative to the |
| 16:28:07 | 6 | information? |
| 16:28:08 | 7 | MR. ALTMAN: If I could have a moment, Your Honor, just |
| 16:28:09 | 8 | to think about it. I don't believe there was, Judge. |
| 16:28:31 | 9 | THE COURT: So at the time you did the debriefing, was |
| 16:28:34 | 10 | there a desire by both to plead guilty and give you necessary |
| 16:28:40 | 11 | information? |
| 16:28:40 | 12 | MR. ALTMAN: Yes. Both of their attorneys -- well, I |
| 16:28:43 | 13 | should say actually now that I think about it, I didn't debrief |
| 16:28:46 | 14 | the second one until February 7th, which was five days after the |
| 16:28:50 | 15 | application. |
| 16:28:50 | 16 | THE COURT: So let's talk about the first one. |
| 16:28:52 | 17 | MR. ALTMAN: Which was January 31st, so three days |
| 16:28:56 | 18 | before the application. |
| 16:28:57 | 19 | THE COURT: Whom did you debrief on January 31st, which |
| 16:29:03 | 20 | one? |
| 16:29:03 | 21 | MR. ALTMAN: I have the report. If I could just pull |
| 16:29:05 | 22 | it out. |
| 16:29:05 | 23 | THE COURT: Go ahead. Sure. |
| 16:30:10 | 24 | MR. ALTMAN: Your Honor, I debriefed Willie Smith on |
| 16:30:13 | 25 | January 31st, 2010. |

| | | |
|---|---|---|
| 16:30:17 | 1 | **THE COURT:**  And what did Mr. Smith tell you relative to |
| 16:30:24 | 2 | Mr. *Davis*? |
| 16:30:24 | 3 | **MR. ALTMAN:**  Well, he said two things about his phone. |
| 16:30:27 | 4 | First, he said that the number for Chop, who is Jahmal Martin, |
| 16:30:32 | 5 | was in his phone.  That was the first thing. |
| 16:30:35 | 6 | I know that -- I guess I should say initially, and even |
| 16:30:39 | 7 | now really, Jahmal Martin was the big target so to speak because |
| 16:30:42 | 8 | he was the leader of the organization.  He was older than |
| 16:30:48 | 9 | everyone else and he also was the operator of a drug hole. |
| 16:30:51 | 10 | So when he told us that Chop's number was on his phone, |
| 16:30:54 | 11 | it was an easy way to corroborate what he was saying because we |
| 16:30:57 | 12 | had Jahmal Martin's phone.  So when we saw the number in the |
| 16:31:02 | 13 | contact list for Jahmal Martin's phone was 305-834-0304, we were |
| 16:31:07 | 14 | able to take Jahmal Martin's phone and confirm that that was the |
| 16:31:11 | 15 | correct number for Jahmal Martin.  So we were able to in that |
| 16:31:13 | 16 | way corroborate Mr. Smith's contact list or the veracity of it. |
| 16:31:19 | 17 | The second step was that we asked him whether Quat's |
| 16:31:24 | 18 | phone number was in his phone.  Of course we had -- |
| 16:31:26 | 19 | **THE COURT:**  What information did you have at that point |
| 16:31:29 | 20 | to even ask that question? |
| 16:31:31 | 21 | **MR. ALTMAN:**  I believe we had a DNA hit, Your Honor, |
| 16:31:36 | 22 | from two separate robberies implicating Mr. *Davis* as one of the |
| 16:31:43 | 23 | robbers. |
| 16:31:43 | 24 | **THE COURT:**  Okay.  So I just want to put the chain |
| 16:31:46 | 25 | together. |

16:31:47  1    You had a DNA hit and then how did you identify that
16:31:53  2  with Mr. *Davis*?

16:31:54  3    **MR. ALTMAN:** Yeah. I apologize, Judge, that means that
16:31:58  4  I should go back a little bit farther.

16:32:04  5    Well, let me say this: On September 25th, 2010, the
16:32:10  6  Universal Beauty Salon was robbed. It was robbed by four men.
16:32:14  7  Ultimately, in early October Smith and Reid would confess that
16:32:20  8  they committed the robberies.

16:32:22  9    On October 1, 2010, five days later, the Mayors jewelry
16:32:28 10  store in Orlando was robbed. That robbery also involved four
16:32:35 11  men.

16:32:35 12    On November 23rd, 2010, a man named Michael Martin was
16:32:40 13  arrested in connection with the Mayors jewelry store robbery, no
16:32:43 14  connection to Jahmal Martin, and he was arrested because his DNA
16:32:48 15  was found among two separate blood splatches in the back seat of
16:32:53 16  the getaway car for that robbery.

16:32:56 17    The first blotch of blood matched Michael Martin so he
16:32:59 18  was arrested. Michael Martin confessed that he had participated
16:33:03 19  in the robbery and implicated three other people, one of whom
16:33:06 20  was Jamarquis Reid and another of whom was the defendant,
16:33:09 21  Mr. *Davis*.

16:33:10 22    So in addition to that, while that was all happening,
16:33:15 23  Mr. *Davis*' DNA was found in the getaway car for the beauty salon
16:33:20 24  robbery and the way we know that is because there was a match
16:33:23 25  from the Orlando Mayors blood, the second set of blood stains,

| 16:33:27 | 1 | to a shirt that was in the beauty salon getaway car. |
| 16:33:33 | 2 | So at that paint, based on Michael Martin's confession |
| 16:33:37 | 3 | that it was Quartavious *Davis*, we had a very strong suspicion, |
| 16:33:40 | 4 | obviously, I suspect we had probable cause, that Mr. *Davis* was |
| 16:33:43 | 5 | the fourth robber at both the beauty salon and the Mayors |
| 16:33:47 | 6 | jewelry store in Orlando --  sorry -- in Weston. |
| 16:33:52 | 7 | So based on that, we ultimately got a search warrant. |
| 16:33:56 | 8 | Well, based on that, we ultimately arrested Mr. *Davis* and |
| 16:34:01 | 9 | Mr. *Davis* was swabbed for DNA, and that was the substance, of |
| 16:34:05 | 10 | course, of the motion to suppress, whether he consented to that |
| 16:34:09 | 11 | swab; but in any event, he was swabbed for DNA on December 23, |
| 16:34:13 | 12 | 2010, and I believe in early January, if I am not mistaken, the |
| 16:34:17 | 13 | DNA came back a positive match both to the Mayors jewelry store |
| 16:34:23 | 14 | and then later to the beauty salon. |
| 16:34:25 | 15 | So by January 31st, I knew that Quat was the fourth |
| 16:34:31 | 16 | robber.  Of course, none of that was disclosed to Mr. Smith in |
| 16:34:34 | 17 | discovery because Quat wasn't charged with Mr. Smith, but I did |
| 16:34:40 | 18 | know at the time.  So we asked about Chop, Jahmal Martin, and we |
| 16:34:44 | 19 | asked about Quat, and both of their phone numbers were in Willie |
| 16:34:48 | 20 | Smith's phone. |
| 16:34:49 | 21 | **THE COURT:**  Okay.  So with that background, what was |
| 16:34:51 | 22 | your next step? |
| 16:34:52 | 23 | **MR. ALTMAN:**  So my next step after debriefing Willie |
| 16:34:55 | 24 | Smith was to apply for an order.  Oh, Mr. Smith also said |
| 16:35:02 | 25 | something that Mr. Reid later corroborated, which is that to all |

| 16:35:07 | 1 | of the robberies they would all bring their cell phones just in |
| 16:35:10 | 2 | case anything went wrong and they got separated and they needed |
| 16:35:14 | 3 | to call somebody to pick them up. |
| 16:35:17 | 4 | So this cell phone we obviously had, I believe, |
| 16:35:22 | 5 | probable cause to believe was being used by Mr. *Davis*, not just |
| 16:35:26 | 6 | randomly, but at the locations of the robberies and that was |
| 16:35:30 | 7 | true, of course, not just of Mr. *Davis* but of Mr. Reid, |
| 16:35:33 | 8 | Mr. Smith and also Jahmal Martin whose number we now also had. |
| 16:35:37 | 9 | So I applied to Judge McAliley on February 2, 2011, for |
| 16:35:42 | 10 | an order pursuant to 2703 authorizing the cell phone provider to |
| 16:35:48 | 11 | provide me with a pen-register trap and trace, which is numbers |
| 16:35:53 | 12 | in and numbers out, and historical cell site information for |
| 16:35:56 | 13 | those four cell phones for the period August 1, 2010 to October |
| 16:36:02 | 14 | 6, 2010. |
| 16:36:03 | 15 | The reason I selected that period was because it seemed |
| 16:36:07 | 16 | to adequately account for the time period in which all seven |
| 16:36:10 | 17 | robberies were committed. |
| 16:36:15 | 18 | THE COURT:  All right.  So you obtained the |
| 16:36:17 | 19 | information. |
| 16:36:17 | 20 | MR. ALTMAN:  Correct. |
| 16:36:17 | 21 | THE COURT:  And the information you obtained included |
| 16:36:24 | 22 | what you described previously. |
| 16:36:25 | 23 | MR. ALTMAN:  Correct.  It is the number -- it is -- as |
| 16:36:28 | 24 | I said, it is numbers in, numbers out, time, duration and then |
| 16:36:33 | 25 | the number of the cell phone tower that was used at a particular |

16:36:36  1   time, either August, September or October, by each cell phone.

16:36:39  2   I got four separate cell phone records.

16:36:42  3            I provided those over to the person who does cell site

16:36:50  4   information at the Miami-Dade Police Department.  He looks for

16:36:56  5   each particular cell tower at a given place and time relative to

16:37:00  6   the robberies and then he looks them up in the glossary where

16:37:08  7   they are and then maps them out in little sort of Google

16:37:13  8   Earth-type maps that show where the tower is, when the robbery

16:37:18  9   happened and where Mr. *Davis* or Mr. Martin or, in that case,

16:37:20 10   Mr. Reid or Mr. Smith's phones were bouncing off of.

16:37:23 11            But as I said initially, it doesn't show where

16:37:25 12   Mr. *Davis*' phone was specifically; it only shows the nearest

16:37:29 13   tower or the most available tower that his phone registered with

16:37:33 14   before making a call.

16:37:34 15            **THE COURT:**  And that was true of the other phones, too?

16:37:37 16            **MR. ALTMAN:**  Yes, that's right, Your Honor.

16:37:40 17            **MR. ZELMAN:**  Can I just interject a query here

16:37:43 18   actually?  My understanding is that the data also shows --

16:37:47 19            **THE COURT:**  I can't hear you, sir.

16:37:48 20            **MR. ZELMAN:**  I'm sorry.  My understanding is that the

16:37:51 21   data also showed direction in which the signal was coming from,

16:37:55 22   which would mean that it is not just a circle surrounding the

16:38:00 23   tower in which the phone could be located, but it is a sector

16:38:06 24   within that circle that the tower -- I'm sorry -- that the phone

16:38:08 25   is located, so it is significantly less than 360 degrees.

Motion to Suppress

16:38:14  1          **MR. ALTMAN:**  That is correct, Your Honor.  There are

16:38:16  2   three sectors to every cell phone tower.  Sometimes the cell

16:38:23  3   phone data will provide you with the sector that's used.  The

16:38:28  4   sector, obviously, provides for 33 percent of the circle, and so

16:38:33  5   it can show you the direction from the tower at a 33 percent

16:38:38  6   angle.

16:38:41  7          So, you know, you get 120 degrees of a particular

16:38:45  8   tower.  So to use an example again, Your Honor, assuming that I

16:38:48  9   was making a call here in the courtroom and there was a tower

16:38:54  10  and I was bouncing off a tower, say, at the Miami Arena, or

16:38:59  11  whatever it is called, the American Airlines Arena, what the

16:39:02  12  cell phone would tell me was that I was 120 degrees from that

16:39:06  13  arena.

16:39:07  14         In other words, I couldn't have been in Miami Beach.  I

16:39:09  15  had to have been on the downtown side, but it doesn't tell you

16:39:14  16  precisely, of course, where that person was because I could be

16:39:17  17  anywhere between the Miami Arena and here.

16:39:20  18         **THE COURT:**  So the evidence that you are proffering and

16:39:26  19  that you are asking to have admitted at some point after

16:39:32  20  foundation would show that there were calls back and forth

16:39:40  21  between and among Smith, Martin and *Davis*?

16:39:44  22         **MR. ALTMAN:**  Actually, it may be helpful if I could put

16:39:47  23  the records on the ELMO and then the Court could see what they

16:39:50  24  look like because the call would be recorded with a tower

16:39:56  25  whether or not Mr. *Davis* called one of his coconspirators.

| 16:39:59 | 1 | So oftentimes the call is to any random number and the |
| 16:40:05 | 2 | location, obviously, of the tower that is nearest to him still |
| 16:40:08 | 3 | shows up obviously. |
| 16:40:11 | 4 | **THE COURT:**  Well, when Mr. *Davis* was arrested, you |
| 16:40:15 | 5 | obtained a cell phone from him? |
| 16:40:17 | 6 | **MR. ALTMAN:**  No.  He had no cell phone on him at the |
| 16:40:19 | 7 | time. |
| 16:40:20 | 8 | **THE COURT:**  All right.  So all you can say is that a |
| 16:40:28 | 9 | certain cell phone number was involved making calls back and |
| 16:40:31 | 10 | forth and was registered on other phones as Quat calling in? |
| 16:40:40 | 11 | **MR. ALTMAN:**  Well, and the cooperators will testify |
| 16:40:43 | 12 | that that is Quat's phone. |
| 16:40:46 | 13 | **THE COURT:**  Right.  And the purpose being is to show |
| 16:40:52 | 14 | Mr. *Davis*'s location relative to the other phones? |
| 16:40:57 | 15 | **MR. ALTMAN:**  No, it is to show that he was in the |
| 16:41:00 | 16 | vicinity of the robberies at or about the time of the robberies. |
| 16:41:07 | 17 | **THE COURT:**  Okay.  That information could be obtained |
| 16:41:12 | 18 | if he made a telephone call from his phone by a certain tower, |
| 16:41:18 | 19 | right? |
| 16:41:18 | 20 | **MR. ALTMAN:**  Correct. |
| 16:41:18 | 21 | **THE COURT:**  Or is located near where a certain robbery |
| 16:41:21 | 22 | occurred? |
| 16:41:21 | 23 | **MR. ALTMAN:**  That is exactly right, Your Honor. |
| 16:41:23 | 24 | **MR. ZELMAN:**  Or received a call. |
| 16:41:25 | 25 | **THE COURT:**  Or received.  But bear with me a second. |

| | | |
|---|---|---|
| 16:41:29 | 1 | But if he made a call, say, to Smith or Martin, it would be on |
| 16:41:36 | 2 | their phone as well, right? |
| 16:41:38 | 3 | MR. ALTMAN:  And it is.  Sometimes that happens, Judge. |
| 16:41:40 | 4 | THE COURT:  So are you offering their records as well |
| 16:41:44 | 5 | to show where they were located relative to the tower at the |
| 16:41:51 | 6 | time of the calls? |
| 16:41:52 | 7 | MR. ALTMAN:  Yes, sir. |
| 16:41:52 | 8 | THE COURT:  So to correlate all of this? |
| 16:41:55 | 9 | MR. ALTMAN:  Correct, and to corroborate the testimony |
| 16:41:57 | 10 | who was where at a particular time. |
| 16:42:00 | 11 | THE COURT:  So this is circumstantial evidence to |
| 16:42:07 | 12 | corroborate the direct testimony of the cooperators? |
| 16:42:10 | 13 | MR. ALTMAN:  That's correct, Your Honor. |
| 16:42:15 | 14 | THE COURT:  Okay.  So are there any other factual |
| 16:42:18 | 15 | nuances here that you want to bring to my attention that would |
| 16:42:25 | 16 | come out through the testimony? |
| 16:42:30 | 17 | MR. ALTMAN:  I think we have probably covered it.  If |
| 16:42:33 | 18 | the Court has any questions, I am happy to answer them. |
| 16:42:36 | 19 | THE COURT:  Well, could you go on the ELMO and show -- |
| 16:42:45 | 20 | is this evidence in two parts, one being the actual records |
| 16:42:48 | 21 | themselves and then the second being the demonstrative which was |
| 16:42:53 | 22 | prepared by the technician? |
| 16:42:58 | 23 | MR. ALTMAN:  It is actually in three parts. |
| 16:43:00 | 24 | THE COURT:  I'm sorry? |
| 16:43:01 | 25 | MR. ALTMAN:  I apologize, Your Honor. |

| | | |
|--|--|--|
| 16:43:02 | 1 | **THE COURT:**  In three parts? |
| 16:43:03 | 2 | **MR. ALTMAN:**  Right.  There is the intervening step, |
| 16:43:06 | 3 | which is the MetroPCS glossary that would tell you, because if |
| 16:43:09 | 4 | you just had the tower numbers on the cell phone records that |
| 16:43:13 | 5 | you get, it may be easiest just to show you on the ELMO. |
| 16:43:39 | 6 | Judge, these are records for codefendant Jamarquis |
| 16:43:43 | 7 | Reid, but all of the records are virtually identical.  As you |
| 16:43:49 | 8 | can see, they are from MetroPCS; and if I could, just to explain |
| 16:43:53 | 9 | how this works, if I had sent an order just asking for |
| 16:44:00 | 10 | pen-register and trap and trace, numbers in, numbers out, what I |
| 16:44:04 | 11 | would have gotten -- |
| 16:44:05 | 12 | **THE COURT:**  Could you move it a little closer?  I |
| 16:44:08 | 13 | can't -- it is blurred.  Thank you. |
| 16:44:12 | 14 | **MR. ALTMAN:**  What I would have gotten is all of this, |
| 16:44:14 | 15 | numbers in, numbers out, time, duration, that kind of thing. |
| 16:44:18 | 16 | Because I included 2703 in my application, in the order |
| 16:44:24 | 17 | that Judge McAliley signed, the cell phone company provides me |
| 16:44:30 | 18 | with these last four columns and the columns are as you can see. |
| 16:44:34 | 19 | Can the Court see? |
| 16:44:36 | 20 | Let me zoom in a little more.  I will zoom in some |
| 16:44:44 | 21 | more. |
| 16:44:45 | 22 | **THE COURT:**  It is all right. |
| 16:44:46 | 23 | There is a column that is beginning cell and ending |
| 16:44:50 | 24 | cell. |
| 16:44:52 | 25 | **MR. ALTMAN:**  Right.  What I would point the Court's |

| | | |
|---|---|---|
| 16:44:54 | 1 | attention to is these four columns.  That is the information |
| 16:44:57 | 2 | that is provided as a result of the 2703 order, and if I could |
| 16:45:05 | 3 | just describe them. |
| 16:45:07 | 4 | Beginning cell means where you are at the time that you |
| 16:45:11 | 5 | place the call or at the time that you received the call.  So as |
| 16:45:14 | 6 | you can see here, the tower when Mr. Reid received this call was |
| 16:45:19 | 7 | tower 129 and sector 2. |
| 16:45:23 | 8 | Ending cell is where the phone was when the call ended |
| 16:45:28 | 9 | and, of course, that can happen if you are on the highway and |
| 16:45:30 | 10 | you make a call, ten minutes later you might be somewhere far |
| 16:45:35 | 11 | away from where you started.  In this case, of course, Mr. Reid |
| 16:45:38 | 12 | was probably stationary, so he was still at the end of the call |
| 16:45:41 | 13 | at tower 129, sector 2. |
| 16:45:44 | 14 | THE COURT:  Okay. |
| 16:45:45 | 15 | MR. ALTMAN:  So that is the first set of records. |
| 16:45:57 | 16 | And I should say that we have those records, as the |
| 16:45:59 | 17 | Court just said, for all four:  Reid, Smith, Martin and for |
| 16:46:04 | 18 | *Davis*. |
| 16:46:33 | 19 | The second step, Judge, is the glossary that I |
| 16:46:37 | 20 | mentioned that is provided by MetroPCS and that glossary, |
| 16:46:45 | 21 | essentially, if you look up here at the very left, that tells |
| 16:46:53 | 22 | you the tower number and then the sector and then the degrees, |
| 16:47:00 | 23 | and I can explain that in a moment, and then the address of |
| 16:47:03 | 24 | where the tower is. |
| 16:47:04 | 25 | THE COURT:  Okay.  So, have you subpoenaed MetroPCS |

| | | |
|---|---|---|
| 16:47:09 | 1 | people to explain their records? |
| 16:47:11 | 2 | **MR. ALTMAN:**  Yes.  There will be a MetroPCS |
| 16:47:13 | 3 | representative here to testify to this. |
| 16:47:17 | 4 | So this is the tower.  Say in Mr. Reid's records it |
| 16:47:23 | 5 | said that at a particular time he was at tower 111, third |
| 16:47:26 | 6 | sector.  What it tells you is that that tower is at this |
| 16:47:32 | 7 | address. |
| 16:47:32 | 8 | **THE COURT:**  Well, what is the 220 for instance? |
| 16:47:34 | 9 | **MR. ALTMAN:**  Right.  So, typically, obviously, if you |
| 16:47:36 | 10 | had a 360 degree circle and you wanted to make the degrees |
| 16:47:42 | 11 | uniform, you would have your sectors go from zero to 120, 120 to |
| 16:47:48 | 12 | 240, and 240 to 360, but that is not always possible in an urban |
| 16:47:52 | 13 | environment because when you are facing to 120 degrees, you |
| 16:47:57 | 14 | might have a giant metallic object in the way, so the sectors |
| 16:48:02 | 15 | might be tilted in a particular direction. |
| 16:48:05 | 16 | So whereas you might think typically that sector 3 |
| 16:48:08 | 17 | would start at 240 degrees and go to 360, might start at 240 |
| 16:48:21 | 18 | degrees and go to 360 such that in the very middle of that |
| 16:48:23 | 19 | sector you would be at 300 degrees, which is what that records, |
| 16:48:28 | 20 | obviously that is impossible in an urban environment. |
| 16:48:30 | 21 | So what this is telling you is that the middle of |
| 16:48:32 | 22 | sector 2, rather than being at 300 degrees, is at 220 degrees. |
| 16:48:39 | 23 | Does that make sense? |
| 16:48:40 | 24 | **THE COURT:**  I am not sure yet, but let's continue.  The |
| 16:48:46 | 25 | third element of it? |

16:49:13   1        **MR. ALTMAN:**  The third kind of record looks like this,

16:49:16   2   Judge.  So what you see here is -- I will zoom out just to show

16:49:27   3   you the time on the top left -- is at a particular time and

16:49:31   4   date, in this case on August 7, 2010, which is the night that

16:49:35   5   the Little Caesar's Pizza was robbed, at 10:07 p.m. Jamarquis

16:49:41   6   Reid made a phone called that bounced off -- or, sorry, received

16:49:45   7   a phone call that bounced off of that tower.

16:49:48   8        What you can see is that, of course, as you will see in

16:49:51   9   the next couple of slides, this tower and this tower are the two

16:49:56  10   closest towers to that particular location, which is the Little

16:50:02  11   Caesar's.

16:50:03  12        So as we move on with the slides, you'll see the next

16:50:07  13   slide is the slide that shows when the robbery occurred at 10:31

16:50:12  14   p.m., the robbery occurs at the Little Caesar.

16:50:15  15        And then you will see that, according to MetroPCS

16:50:20  16   records, at 10:31 p.m. Mr. *Davis* makes a call from this tower

16:50:25  17   which is on Dixie Highway but, of course, that doesn't mean that

16:50:30  18   Mr. *Davis* was on Dixie Highway.  He could be a few blocks away.

16:50:35  19   And then what you will see is at 10:33, Mr. Smith is bouncing

16:50:42  20   off again this tower and so on and so forth.

16:50:48  21        I believe just off the top of my head, Judge, that this

16:50:55  22   call by Mr. *Davis*, that this tower was from sector 1 and in this

16:51:02  23   particular tower, sector 1 is at 20 degrees.  20 degrees, of

16:51:07  24   course, being somewhere in this direction here and, of

16:51:12  25   course, maybe I could draw the azimuth.  We have an azimuth and

| 16:51:17 | 1 | 20 degrees is that way and you have three sectors. |

16:51:25   2        Then, what that means is that he could be anywhere in
16:51:28   3   this area.
16:51:28   4        **THE COURT:**  So the foundation --
16:51:30   5        **MR. ZELMAN:**  Excuse me, Judge.
16:51:31   6        **THE COURT:**  Among the foundation evidence you would
16:51:32   7   have to present is testimony from the cooperating codefendants
16:51:37   8   that the telephone number 561-767-5642 was the one that they
16:51:46   9   called to reach Quat who was identified as *Davis*.
16:51:50  10        **MR. ALTMAN:**  That's correct, Your Honor.
16:51:52  11        **THE COURT:**  And they will have their phone records in
16:52:03  12   that corroborates whatever testimony they give on that?
16:52:05  13        **MR. ALTMAN:**  Well, we have Willie Smith's phone and he
16:52:08  14   will just look through his contact list.
16:52:10  15        **MR. ZELMAN:**  Judge, can I interrupt and just put
16:52:12  16   something on the record that I think needs to be done?
16:52:17  17        Mr. Altman's demonstration just a few moments ago when
16:52:21  18   he indicated the direction and which point and he used his
16:52:26  19   finger to indicate the sector, what he is doing, it should be on
16:52:31  20   the record, that he essentially aimed the direction as towards
16:52:35  21   the scene of the crime, Little Caesar's, and I don't know if
16:52:39  22   that is going to be clear in any kind of a record that we are
16:52:42  23   making here.
16:52:44  24        **MR. ALTMAN:**  In fairness, I don't think I did that.
16:52:46  25   All I did was explain that if you have a 360-degree azimuth and

Motion to Suppress

| | | |
|---|---|---|
| 16:52:50 | 1 | if you have three sectors, sorry, with one of the sectors having |
| 16:52:59 | 2 | 20 degrees as its center, that means that he would have to be in |
| 16:53:03 | 3 | this sector, somewhere in this area. |
| 16:53:05 | 4 | **MR. ZELMAN:**  Meaning towards Little Caesar's. |
| 16:53:07 | 5 | **THE COURT:**  Well, this is another aspect of the |
| 16:53:11 | 6 | evidence, but is it your intent to try to draw those lines |
| 16:53:21 | 7 | yourself? |
| 16:53:21 | 8 | **MR. ALTMAN:**  Not at all.  In fact, we are not even |
| 16:53:23 | 9 | going to get into any of that, frankly.  I was just trying to |
| 16:53:27 | 10 | explain it. |
| 16:53:28 | 11 | What I was just going to have the person testify is |
| 16:53:30 | 12 | that the defendant's phone was bouncing off -- the defendant and |
| 16:53:34 | 13 | his cooperators, we are going to say that they did the robbery |
| 16:53:38 | 14 | together, are at all times during this robbery and, frankly, |
| 16:53:41 | 15 | every robbery bouncing off the nearest towers to that robbery |
| 16:53:44 | 16 | location at or about the times of that robbery. |
| 16:53:47 | 17 | **THE COURT:**  Okay. |
| 16:53:49 | 18 | **MR. ZELMAN:**  Judge, my concern is I'm not sure that |
| 16:53:52 | 19 | we're getting a full picture of the significance of the location |
| 16:53:56 | 20 | evidence.  Maybe I am misunderstanding Mr. Altman. |
| 16:54:00 | 21 | The data is on the records.  It is not necessarily on |
| 16:54:08 | 22 | the exhibits, this third stage, unless somebody draws it just |
| 16:54:11 | 23 | the way Mr. Altman did a moment ago.  And if the Government is |
| 16:54:16 | 24 | not going to do that drawing, what is the purpose in introducing |
| 16:54:20 | 25 | the sector evidence? |

Motion to Suppress

16:54:22   1        **MR. ALTMAN:**  I am not introducing the sector -- well,

16:54:25   2   the sectors will come in because they are part of the records

16:54:30   3   and, of course, the jurors can always verify that maybe his

16:54:32   4   phone was bouncing off of a different site.  To end the mystery,

16:54:38   5   it never does.

16:54:39   6        But we're not going to get into it, frankly, because in

16:54:39   7   my experience doing these records, I think in eight or nine

16:54:42   8   trials, that is just too complicated, I think, for the jurors

16:54:45   9   and I think it is much easier, especially when you have many

16:54:48   10  robberies and the defendant's phone is at the towers or close to

16:54:52   11  the towers of all the robberies at different places in the

16:54:55   12  county at different times, I think that evidence is in itself

16:54:59   13  sufficient.

16:54:59   14       I am not going to get into the sectors.  That is my own

16:55:03   15  trial strategy point, but they are in the records for the jurors

16:55:05   16  or Mr. Zelman to corroborate if they so please.

16:55:09   17       **THE COURT:**  All right.  So, thank you for showing me

16:55:12   18  what the components of the proffer is.

16:55:20   19       Legally what is your position in response to the issues

16:55:23   20  raised in the motion and the arguments?

16:55:30   21       **MR. ALTMAN:**  Your Honor, my first point would be that

16:55:33   22  the defendant has not demonstrated that he has any standing to

16:55:38   23  suppress this evidence under the Fourth Amendment.

16:55:41   24       The phone, first of all, was never recovered,

16:55:45   25  obviously, on his person.  He has never admitted that it is his

16:55:49  1   phone and, most importantly, that he had it on him at the times

16:55:53  2   that are relevant in this trial, because presumably he is only

16:55:56  3   suppressing the phone records as they apply to particular dates

16:55:59  4   and times.  That's the only thing anybody really is planning on

16:56:02  5   using.

16:56:02  6        So he has not admitted that he either owned the phone

16:56:05  7   or possessed it, most importantly, at those relevant times.

16:56:09  8        In addition --

16:56:10  9        **THE COURT:**  Well, let's say hypothetically that when

16:56:16  10  Mr. *Davis* was arrested there was his cell phone found and you

16:56:21  11  were trying to then introduce his cell phone in conjunction with

16:56:26  12  this information and the like.

16:56:29  13       Would that make a difference for analysis?

16:56:32  14       **MR. ALTMAN:**  Under the standing rationale?  I don't

16:56:34  15  think it would, frankly.  I think there is a lot of cases from

16:56:38  16  this and every circuit that I cited, and the cases that I gave

16:56:41  17  over, where a defendant must actually testify that the object is

16:56:45  18  his or hers and that specifically with respect to cell phones,

16:56:50  19  that that cell phone was in that person's possession.

16:56:53  20       The reason for that is a good one.  The defendant must

16:56:56  21  establish that they had a possessory interest in that cell phone

16:56:59  22  and that they did certain things, reasonable precautions, to

16:57:02  23  make sure that the cell phone was kept private and that its

16:57:05  24  information was kept private.

16:57:07  25       So, for instance, if the defense were -- and I have

| | | |
|---|---|---|
| 16:57:11 | 1 | seen this a lot of times -- the defendant miraculously lent the |
| 16:57:16 | 2 | cell phone to a friend every single time that there was a |
| 16:57:18 | 3 | robbery, of course the defendant in that case would not have |
| 16:57:20 | 4 | standing.  He would have to testify not only that he owned the |
| 16:57:22 | 5 | phone or possessed the phone, but also that he possessed it at |
| 16:57:25 | 6 | the relevant times. |
| 16:57:26 | 7 | I should say with respect to that, I think both |
| 16:57:30 | 8 | Ms. Perwin and I have done a lot of research on the subject and |
| 16:57:34 | 9 | it sounds like in this circuit and just about every other |
| 16:57:36 | 10 | circuit where a cell phone is registered under a false or |
| 16:57:41 | 11 | fictitious alias, as this cell phone was -- and I can show you |
| 16:57:45 | 12 | the alias that his phone is subscribed under -- in this case it |
| 16:57:49 | 13 | is Lil Wayne who is a famous rapper -- that in those situations |
| 16:57:57 | 14 | the defendant cannot demonstrate standing because he cannot |
| 16:58:00 | 15 | demonstrate a reasonable expectation of privacy, the theory |
| 16:58:03 | 16 | being that the defendant has disassociated himself from that |
| 16:58:05 | 17 | phone by using a false alias in registering for the phone. |
| 16:58:08 | 18 | But putting standing aside for a moment, which I think |
| 16:58:11 | 19 | is probably where the Court wants me to go, I think the next |
| 16:58:15 | 20 | point in the analysis is that we applied for this order pursuant |
| 16:58:23 | 21 | to a congressional act that was in place and that as the cases |
| 16:58:26 | 22 | that I have placed before the Court, I think, made clear, |
| 16:58:30 | 23 | authorizes precisely what we have done, which is to apply to a |
| 16:58:35 | 24 | duty Magistrate Judge who is a neutral judge, and to display in |
| 16:58:40 | 25 | the application what are called specific and articulable facts |

| 16:58:44 | 1 | to an ongoing investigation. |

16:58:44  1  to an ongoing investigation.

16:58:46  2      I believe we not only did that, but that we showed,

16:58:48  3  based on what I said today and what is in the application, that

16:58:51  4  in fact there was probable cause to believe not just that this

16:58:53  5  was his phone but that it was being used during the commission

16:58:56  6  of these crimes.

16:58:57  7      That statute has been upheld not only constitutionally,

16:59:03  8  but it's also been said by the District of Massachusetts, I

16:59:07  9  believe, in a case that we provided to the Court, and in a case

16:59:10  10  that cites lots of other districts from lots of other circuits,

16:59:13  11  that, in fact, applications like the one that I provided are

16:59:18  12  what is sufficient for the Fourth Amendment under 2703.  In

16:59:21  13  other words, we have done precisely what 2703 requires.

16:59:25  14      But moving on from that, I guess the most important

16:59:27  15  question that Mr. Zelman raises is whether *Jones*, the recent

16:59:31  16  Supreme Court case in United States v. *Jones* changes all of

16:59:33  17  that, and I think the answer is no.

16:59:36  18      *Jones*, as Justice Scalia, who Mr. Zelman conveniently

16:59:40  19  never mentioned and wrote the majority opinion which is binding

16:59:43  20  law in this country, deals with a very narrow and specific issue

16:59:47  21  that simply does not arise here.

16:59:50  22      *Jones* deals first and foremost with a trespass by the

16:59:54  23  Government onto a defendant's personal property, in that case in

16:59:57  24  effect the car of Mr. *Jones*.  What the Government did in that

17:00:01  25  case, of course, is they took a slap-on tracker when Mr. *Jones*

17:00:04  1   was not looking and they placed it underneath the hood of his

17:00:07  2   car, and that act of trespassing onto his property to garner law

17:00:11  3   enforcement information, Justice Scalia writes, has been deemed

17:00:16  4   a Fourth Amendment violation since the 1780s.

17:00:19  5         So really what I agree with Mr. Zelman is that *Jones*

17:00:22  6   doesn't really change anything at all.  A trespass by law

17:00:25  7   enforcement to garner law enforcement information is a violation

17:00:28  8   of the Fourth Amendment.

17:00:30  9         Of course, and I don't think Mr. Zelman can contest

17:00:32  10  this, there was no trespass here.  In fact, we never even

17:00:35  11  recovered Mr. *Davis*' phone.  The information that was provided

17:00:39  12  to us was provided to us by a private company.

17:00:45  13        I think the second point in *Jones* is that *Jones*

17:00:49  14  involved realtime tracking of information.  As I said to the

17:00:53  15  Court, 2703 does provide for the distinction between realtime

17:00:57  16  tracking and historical information.  In this case, again, we

17:01:00  17  don't have anything in the manner of realtime tracking that was

17:01:03  18  present in *Jones*.

17:01:05  19        Frankly, the cell site information wouldn't necessarily

17:01:08  20  be able to tell you whether or not he was visiting an abortion

17:01:11  21  clinic or whatever, examples Justice Sotomayor provided, and it

17:01:15  22  wouldn't certainly do it in realtime.  So, therefore Mr. *Davis*

17:01:19  23  wasn't being tracked at all.

17:01:21  24        Realistically, the more adequate analogy is that what

17:01:25  25  is going on here is very much akin to what the Supreme Court

| 17:01:29 | 1 | held was constitutional in the *Miller* case that I provided to |
| 17:01:32 | 2 | you, which is corporate records, and I think the Supreme Court |
| 17:01:37 | 3 | and every circuit in this country has said that historical |
| 17:01:40 | 4 | records obtained and maintained by a private business in the |
| 17:01:44 | 5 | regular course of its business do not require probable cause and |
| 17:01:49 | 6 | also do not raise the specter of the Fourth Amendment insofar as |
| 17:01:54 | 7 | a defendant doesn't have any private -- sorry, reasonable |
| 17:01:57 | 8 | expectation of privacy in that data because he provides that |
| 17:02:00 | 9 | data to the public every day, credit card records, banking |
| 17:02:06 | 10 | records, cell phone records. |
| 17:02:07 | 11 | You know, even in a marijuana grow house situation the |
| 17:02:10 | 12 | electrical bill of a particular house can be subpoenaed by the |
| 17:02:14 | 13 | Government without any Fourth Amendment infringement.  The |
| 17:02:18 | 14 | reality, Judge, is that what *Jones* specifically said is that |
| 17:02:21 | 15 | even if none of the things I have just said were true, that |
| 17:02:25 | 16 | *Knotts* and *Karo*, two pretty preeminent Supreme Court opinions |
| 17:02:30 | 17 | from the 1970s, are still good law today, that *Jones* doesn't |
| 17:02:34 | 18 | change those opinions. |
| 17:02:35 | 19 | As the Court knows, those opinions involved the placing |
| 17:02:38 | 20 | of a beeper device by the Government into a particular object, |
| 17:02:42 | 21 | say a gun box or a bag of drugs, or whatever the case may be, |
| 17:02:46 | 22 | and then providing it over to the defendant. |
| 17:02:48 | 23 | What the Supreme Court said is when that beeper is |
| 17:02:51 | 24 | placed while it is in the possession either of a private company |
| 17:02:54 | 25 | or in the possession of the Government -- in *Knotts* I think it |

| 17:02:57 | 1 | was the DEA's bag, and then provide it to the defendant -- again |
| 17:03:02 | 2 | the defendant has no reasonable expectation of privacy in those |
| 17:03:05 | 3 | objects at the time that the intrusion is conducted. |
| 17:03:09 | 4 | That is, of course, true here.  Even if we were talking |
| 17:03:12 | 5 | about realtime tracking, even if we were talking about GPS |
| 17:03:16 | 6 | triangulation, the reality of the matter is that all of that was |
| 17:03:19 | 7 | done by a private company during the regular course of its |
| 17:03:22 | 8 | business and then subsequently provided to law enforcement. |
| 17:03:24 | 9 | In other words, it was done at a time when the |
| 17:03:26 | 10 | defendant had no expectation of privacy in his phone because it |
| 17:03:30 | 11 | was done when the cell phone was provided to the defendant by |
| 17:03:32 | 12 | the company. |
| 17:03:34 | 13 | THE COURT:  Your first point is that this is not a |
| 17:03:38 | 14 | realtime tracking situation analogous to putting that device |
| 17:03:44 | 15 | under the car and monitoring in realtime where that car is |
| 17:03:48 | 16 | going. |
| 17:03:48 | 17 | MR. ALTMAN:  Correct. |
| 17:03:49 | 18 | THE COURT:  Okay.  And as I understand, the second |
| 17:03:53 | 19 | point of the analysis is that there is no expectation of privacy |
| 17:04:02 | 20 | in the records of the cell phone company as to all of the |
| 17:04:10 | 21 | information that you have shown the company records in the |
| 17:04:16 | 22 | course of their business. |
| 17:04:17 | 23 | MR. ALTMAN:  That's correct, Your Honor. |
| 17:04:18 | 24 | THE COURT:  Because anybody that uses the cell phone |
| 17:04:24 | 25 | has no expectation of privacy that the information about the use |

| 17:04:28 | 1 | of the cell phone would not be recorded in the records. |

17:04:28   1   of the cell phone would not be recorded in the records.

17:04:33   2          **MR. ALTMAN:**  By the company, that's correct, Your

17:04:35   3   Honor.

17:04:35   4          **THE COURT:**  And then your third point is --

17:04:38   5          **MR. ALTMAN:**  That there was no trespass.

17:04:40   6          **THE COURT:**  And the fourth point is that it is still a

17:04:45   7   good faith exception under the Stored Communications Act, this

17:04:53   8   aspect, which has not been held unconstitutional.

17:04:56   9          **MR. ALTMAN:**  That is correct, Your Honor.

17:04:58   10         **THE COURT:**  Okay.  I think I get a general idea of

17:05:01   11  where you are.

17:05:02   12         Mr. Zelman, your position on any of those matters?

17:05:06   13         **MR. ZELMAN:**  Sure, Judge.

17:05:12   14         I think kind of to put it colloquially, Mr. Altman is

17:05:21   15  living in the pre-*Jones* world.

17:05:24   16         It does not matter whether we're talking about

17:05:27   17  historical records or realtime seizure of location information.

17:05:34   18  The concern that is expressed by five Justices is aggregation of

17:05:42   19  information about where a person is located on a long-term basis

17:05:49   20  because you learn so much, and that is where the privacy

17:05:53   21  interest lies.  It is a recognition of what reality is with the

17:06:00   22  new electronics that we all live with.

17:06:03   23         So I just don't understand how we can now view current

17:06:09   24  Fourth Amendment law in light of cases which go back to the

17:06:13   25  1960s talking about privacy in bank records, which we don't

| | | |
|---|---|---|
| 17:06:24 | 1 | have, because back then nobody thought that when you give |
| 17:06:27 | 2 | something voluntarily to a third party, when you really give it |
| 17:06:30 | 3 | to them, that you should have any expectation of privacy in what |
| 17:06:33 | 4 | you give. |
| 17:06:34 | 5 | Now it is what is being taken from you by electronic |
| 17:06:38 | 6 | service providers, whether it is an Internet Service Provider or |
| 17:06:43 | 7 | whether it is a cell phone company.  They are taking your |
| 17:06:46 | 8 | location data from you and what the five Justices are concerned |
| 17:06:52 | 9 | about is that the Government should not be allowed to just grab |
| 17:06:55 | 10 | it and learn where you have been for the last three weeks, three |
| 17:07:01 | 11 | months or three years. |
| 17:07:03 | 12 | So I think the initial problem with Mr. Altman's |
| 17:07:08 | 13 | analysis is failure to recognize this fiction between historical |
| 17:07:14 | 14 | and realtime data. |
| 17:07:16 | 15 | THE COURT:  Well, let me pose something to you, and I |
| 17:07:19 | 16 | haven't really thought this out clearly, so bear with me, but I |
| 17:07:27 | 17 | have had cases involving child pornography over the Internet |
| 17:07:38 | 18 | provider. |
| 17:07:44 | 19 | So Person A communicates with Person B through a chat |
| 17:07:50 | 20 | room, and Person A transmits images back and forth and the |
| 17:08:02 | 21 | Government then subpoenas the -- I'm not sure if I am using the |
| 17:08:14 | 22 | right indication -- Internet provider to turn over all the |
| 17:08:23 | 23 | information about the Internet messages that have gone back and |
| 17:08:34 | 24 | forth. |
| 17:08:35 | 25 | Are you saying that *Jones* has changed the law, for |

17:08:41  1  instance, in that area, too, that there is a right to privacy as

17:08:47  2  to the company information about how data was transmitted back

17:08:54  3  and forth?

17:08:56  4        MR. ZELMAN:  I'm not going to read *Jones* that far right

17:09:02  5  now, for sure, because that is something that *Jones* did not

17:09:05  6  address in any factual sense.

17:09:07  7        THE COURT:  Right.

17:09:08  8        MR. ZELMAN:  The factual problem with *Jones* was the

17:09:11  9  Government using modern-day electronics to track someone's

17:09:17  10  movement.

17:09:18  11        THE COURT:  Well, what the Government is doing is

17:09:24  12  requesting through subpoena information prepared by a third

17:09:28  13  party provider of communications that were made through cell

17:09:34  14  phone devices and then trying to locate that information

17:09:41  15  relative to towers.

17:09:44  16        MR. ZELMAN:  You just analyzed the case in terms of our

17:09:47  17  specific facts and I don't disagree with that.

17:09:51  18        THE COURT:  Okay.  So what is at issue here, what you

17:09:59  19  are trying to suppress, is the records of the third-party

17:10:07  20  companies that have all this information about how a cell phone

17:10:14  21  is used and communicates with another cell phone at a particular

17:10:19  22  time and location.

17:10:20  23        MR. ZELMAN:  Yes, but let me emphasize it is the

17:10:24  24  location data associated with a specific telephone, that is what

17:10:31  25  is protected by the Fourth Amendment, not who you called or when

17:10:35  1   you made the call or how long you were on the telephone for.

17:10:40  2        It is where you were at that moment in time because

17:10:44  3   when you keep adding every minute, two minutes, or whatever the

17:10:49  4   interval is when it is small, as these enormous data banks now

17:10:56  5   will save, you have problems when the Government gets that

17:11:01  6   information because it knows much more about an individual when

17:11:05  7   it does that than if it was simply looking at who he calls.

17:11:10  8        So the defendant calls his mother on a regular basis.

17:11:14  9   So an individual calls his homosexual lover on a regular basis.

17:11:24  10  That tells you something, but it doesn't tell you as much as

17:11:28  11  where an individual goes every minute of the day over a long

17:11:33  12  period of time.  That is the issue.

17:11:38  13       **THE COURT:**  What about the argument on standing as a

17:11:41  14  preliminary matter.  If a person goes ahead and buys one of

17:11:47  15  those cell phones where you are buying minutes already

17:11:52  16  programmed and uses a false identification, for instance, to

17:11:57  17  purchase the phone, and then it is the same scenario where the

17:12:04  18  phone is used in some type of criminal activity.

17:12:12  19       Is there a right of privacy in that information

17:12:16  20  relative to the phone?

17:12:18  21       **MR. ZELMAN:**  Sure, Judge.  Even under Mr. Altman's

17:12:22  22  analysis, there is because what you might not have the right of

17:12:26  23  privacy in is that phone and what you enter into that phone, the

17:12:32  24  numbers you call, the contact list you create, your fingerprints

17:12:40  25  that you leave on the phone perhaps even, because you have

| | | |
|---|---|---|
| 17:12:42 | 1 | demonstrated something which the Courts have not prepared to |
| 17:12:45 | 2 | recognize, the lower Courts at least, which is you can't have a |
| 17:12:48 | 3 | right to privacy in something when you give false information to |
| 17:12:52 | 4 | obtain this communication device, but we are not talking about |
| 17:12:55 | 5 | the device anymore. |
| 17:12:56 | 6 | This is again the pre-*Jones* thought process which five |
| 17:13:02 | 7 | Justices are now telling us you can't rely upon anymore.  If you |
| 17:13:08 | 8 | bought a tracking device and used a fake name, but didn't know |
| 17:13:13 | 9 | it was a tracking device because the manufacturer hadn't told |
| 17:13:18 | 10 | you when you bought the toy, whatever it is, that it was going |
| 17:13:21 | 11 | to keep track of your physical location, and the Government then |
| 17:13:26 | 12 | obtained that information from the third party, it wouldn't |
| 17:13:32 | 13 | matter that you had no Fourth Amendment right with respect to |
| 17:13:38 | 14 | the device, the toy, whatever it is that you bought that had the |
| 17:13:43 | 15 | tracking device secreted within it. |
| 17:13:45 | 16 | What the Fourth Amendment now clearly protects and what |
| 17:13:48 | 17 | it apparently always did, but we just didn't recognize it, is |
| 17:13:53 | 18 | that the Government can't just grab location data about you |
| 17:13:59 | 19 | which includes periods of time over an extended length of |
| 17:14:05 | 20 | time -- |
| 17:14:06 | 21 | **THE COURT:**  Right. |
| 17:14:06 | 22 | **MR. ZELMAN:**  -- whereby they learn intimate details |
| 17:14:09 | 23 | about an individual's life. |
| 17:14:10 | 24 | **THE COURT:**  But, of course, there is no congressional |
| 17:14:15 | 25 | act relative to that type of tracking device -- |

17:14:19  1        **MR. ZELMAN:**  I quite agree.

17:14:21  2        **THE COURT:**  -- that allows for the Government to go in

17:14:24  3   to obtain permission, be it, you know, under one standard or

17:14:32  4   another.

17:14:32  5        **MR. ZELMAN:**  I quite agree.  The statute is problematic

17:14:38  6   for my argument, and I didn't fully understand that until I read

17:14:44  7   the *Davis* case, again the Supreme Court *Davis* case, earlier

17:14:48  8   today.

17:14:48  9        I think it is something which I need to further address

17:14:52  10  with the Court because although there is a problem with that

17:14:55  11  statute as recognized by, as far as I know, the only appellate

17:14:59  12  decision in the country, appellate court, which is the Third

17:15:02  13  Circuit case which talks about location data with respect to

17:15:10  14  when the statute is used to obtain location data -- Mr. Altman

17:15:15  15  is fiercely going through paper.

17:15:19  16       Perhaps I am wrong with it being the only appellate

17:15:22  17  decision, but at least that is what my research showed at the

17:15:25  18  time I prepared the motion.

17:15:26  19       They questioned whether that statute could be used for

17:15:30  20  all location data.  The circle that they said yes to stopped

17:15:36  21  where you entered a person's home, or the way I understood it, a

17:15:41  22  zone of privacy that has been recognized in more absolute terms

17:15:47  23  by prior Court decisions, Supreme Court decisions.

17:15:50  24       I mean, perhaps a doctor's office would be excluded

17:15:53  25  under the Third Circuit's analysis.  Perhaps a confessional

17:15:58  1   booth in a church or a synagogue would be excluded because that

17:16:03  2   is just too private an area.

17:16:05  3       But I don't really believe that that's a completely

17:16:11  4   accurate analysis because my understanding of Fourth Amendment

17:16:15  5   was it still protects people, not places, and if you had a

17:16:19  6   particularly private place that wasn't traditional, but yet

17:16:24  7   society would still be prepared to recognize, I don't think the

17:16:28  8   Government could track you within that place or tell how many

17:16:31  9   times you went to that place or tell how often or how long you

17:16:37  10  stayed there.

17:16:38  11      So the point that I really want to get across tonight,

17:16:43  12  Judge, if I can, is we have got to stop thinking about places

17:16:48  13  and devices with respect to privacy interests when those places

17:16:57  14  being searched, those devices being seized, tell the Government

17:17:03  15  where an individual has been over a long period of time because

17:17:07  16  that is no longer acceptable to five Justices of the United

17:17:11  17  States Supreme Court.

17:17:12  18      **THE COURT:**  Anything else, Mr. Altman?

17:17:16  19      **MR. ALTMAN:**  Your Honor, if I could just very briefly

17:17:18  20  respond to that.  I know the Court has to go.  I will just leave

17:17:23  21  it at that then.

17:17:26  22      I think if I could just in two sentences, *Jones* has

17:17:31  23  nothing to do, of course, with extended or protracted tracking.

17:17:35  24  It has everything to do with placing an object on someone else's

17:17:39  25  property.  That is what five Justices held, and Justice Scolia

17:17:46  1   specifically says that *Jones* does not overrule *Knotts* or *Karo*

17:17:51  2   which address the hypothetical the Court gave, which is when a

17:17:55  3   private company or the Government installs a tracking device in

17:18:00  4   either a private company's possession or something that is in

17:18:02  5   the Government's possession and then provides it to the

17:18:06  6   defendant, because in that situation the defendant did not have

17:18:08  7   a reasonable expectation of privacy at the time that the, quote

17:18:12  8   unquote, trespass occurred, so there would be no trespass and no

17:18:15  9   violation of the Fourth Amendment.

17:18:18  10        **THE COURT:**  All right.  Thank you.  I am going to deny

17:18:22  11   the motion to suppress at this stage and allow the Government to

17:18:28  12   go forward with proper foundation, of course, and attempt to

17:18:34  13   introduce the evidence.

17:18:40  14        At the end of the trial I'll allow, if there is a

17:18:44  15   guilty verdict, a motion for mistrial based on that or a new

17:18:51  16   trial.  It is my intention to write something on this issue

17:18:56  17   stating my reasons, but I don't want to do that prematurely at

17:19:04  18   this stage, that is, write a written opinion, before I have a

17:19:10  19   complete set of facts to work with.

17:19:14  20        So, it is, in effect, a conditional denial of the

17:19:22  21   motion at this stage based upon what I know and the proffer and

17:19:27  22   what I believe is the appropriate application of the law, but at

17:19:34  23   the end of the day, I will put it into written form if we are in

17:19:40  24   that situation.

17:19:41  25        **MR. ALTMAN:**  Does the Court want me to file a response

| | | |
|---|---|---|
| 17:19:44 | 1 | before that time? |
| 17:19:46 | 2 | **THE COURT:**  No.  I think what I would prefer to do is |
| 17:19:51 | 3 | see where this case goes, and then I think the appropriate way |
| 17:19:58 | 4 | to deal with this would be in any post-trial motions that |
| 17:20:08 | 5 | Mr. Zelman would wish to make, if they are necessary, that |
| 17:20:15 | 6 | preserves and reiterates this argument based upon the facts that |
| 17:20:19 | 7 | are presented and, you know, the motions could be any one of a |
| 17:20:25 | 8 | number of them.  I think it would be appropriate for the United |
| 17:20:29 | 9 | States to respond and for the Court to issue a written order on |
| 17:20:36 | 10 | some new territory. |
| 17:20:41 | 11 | But doing anything more at this juncture on matters |
| 17:20:51 | 12 | that have not been fully explicated seems to me not to be |
| 17:20:56 | 13 | particularly helpful, but I am comfortable enough with the |
| 17:20:59 | 14 | Government's position and explanation and analysis of the case |
| 17:21:03 | 15 | law to allow the evidence to go forward, at least to be |
| 17:21:11 | 16 | presented to the jury subject to having further motions at a |
| 17:21:15 | 17 | later time. |
| 17:21:17 | 18 | Thank you for your appearances.  We will see you |
| 17:21:21 | 19 | promptly at nine o'clock tomorrow. |
| 17:21:23 | 20 | Yes, sir. |
| 17:21:23 | 21 | **MR. ALTMAN:**  Your Honor, if I may, and obviously I know |
| 17:21:25 | 22 | that we are not going to get to this now, but there are three |
| 17:21:30 | 23 | issues that I believe we have to get to before several witnesses |
| 17:21:33 | 24 | who may get on the stand tomorrow testify. |
| 17:21:37 | 25 | The first is, very simply, stipulations.  Mr. Zelman |

17:21:41  1  and I have agreed to stipulations.  I have never had this happen

17:21:44  2  before, but Mr. Zelman's position is that he doesn't like his

17:21:48  3  client's signature to be presented to the jurors.  I just had a

17:21:52  4  2255 where the issue came up, and I think the defendant needs to

17:21:56  5  stipulate also.

17:21:57  6      So what I have recommended to Mr. Zelman and what he

17:21:59  7  has agreed to do is I prepared the stipulations.  Mr. Zelman and

17:22:03  8  I signed them.  That is what is going to go back to the jurors.

17:22:07  9  Mr. Zelman went over them with Mr. *Davis* and Mr. *Davis* is

17:22:10  10  amenable to them.

17:22:12  11     For the record, what I would request from the Court is

17:22:15  12  just to colloquy Mr. *Davis* that Mr. Zelman went over them with

17:22:18  13  him and that he is in agreement with those stipulations.

17:22:22  14     **THE COURT:**  Since I don't have the stipulations in

17:22:24  15  front of me, I am not sure what we're talking about.

17:22:27  16     **MR. ALTMAN:**  They are all stipulations to the

17:22:30  17  authenticity of the video recordings, the surveillance videos

17:22:33  18  from the robberies, and that each business was involved in

17:22:36  19  interstate commerce.  I could provide the Court with the

17:22:38  20  stipulations.

17:22:43  21     **THE COURT:**  Well, Mr. Zelman, what about the status of

17:22:51  22  the stipulations?  You've signed them.  Mr. *Davis* does not want

17:22:55  23  to sign them, but he is in agreement to them?  Is that what the

17:22:59  24  situation is?

17:23:01  25     **MR. ZELMAN:**  Yes.  To simply put it, Judge, we would

| | | |
|---|---|---|
| 17:23:04 | 1 | not enter a stipulation if the jury was informed that Mr. *Davis* |
| 17:23:09 | 2 | was acknowledging evidence which he has no knowledge about.  So |
| 17:23:12 | 3 | I, as a lawyer, have knowledge of the evidence and I am |
| 17:23:15 | 4 | perfectly willing to enter into a stipulation. |
| 17:23:23 | 5 | Mr. *Davis*, as the person on trial and my client, is |
| 17:23:26 | 6 | willing to acknowledge that he has authorized me to do this. |
| 17:23:29 | 7 | **THE COURT:**  Mr. *Davis*, I am going to put you under oath |
| 17:23:31 | 8 | for the limited purpose to determine whether you have authorized |
| 17:23:33 | 9 | Mr. Zelman to act as he described.  Do you understand? |
| 17:23:38 | 10 | THE DEFENDANT:  Yes. |
| 17:23:38 | 11 | **THE COURT:**  So would you raise your right hand and be |
| 17:23:41 | 12 | sworn.  You don't have to get up. |
| 17:23:44 | 13 | [The defendant was sworn by the Court at 5:23 p.m.] |
| 17:23:45 | 14 | THE DEFENDANT:  Yes. |
| 17:23:47 | 15 | **THE COURT:**  So have you authorized Mr. Zelman to act as |
| 17:23:52 | 16 | he described? |
| 17:23:53 | 17 | THE DEFENDANT:  Yes. |
| 17:23:54 | 18 | **THE COURT:**  Did anybody force you to do so? |
| 17:23:59 | 19 | THE DEFENDANT:  No. |
| 17:24:00 | 20 | **THE COURT:**  Do you feel that he has given you a full |
| 17:24:02 | 21 | explanation of everything you needed to know about it? |
| 17:24:04 | 22 | THE DEFENDANT:  Yes. |
| 17:24:05 | 23 | **THE COURT:**  All right.  I am satisfied it is a |
| 17:24:07 | 24 | voluntary authorization then. |
| 17:24:08 | 25 | What else do we have to cover? |

| | | |
|---|---|---|
| 17:24:09 | 1 | **MR. ALTMAN:** The second thing, Judge, is the |
| 17:24:14 | 2 | 801(d)(2)(E) question, which I think is straightforward and can |
| 17:24:17 | 3 | be resolved quickly. And the last issue, the third issue, is |
| 17:24:21 | 4 | whether or not Mr. Zelman will be permitted to cross-examine one |
| 17:24:25 | 5 | of the detectives who will probably testify tomorrow about |
| 17:24:29 | 6 | issues relating to the defendant's post-arrest interview. |
| 17:24:33 | 7 | I don't know if the Court remembers I filed a Motion in |
| 17:24:35 | 8 | Limine because -- |
| 17:24:38 | 9 | **THE COURT:** Okay. Well, what I said was I wanted to |
| 17:24:41 | 10 | hear the direct testimony. |
| 17:24:44 | 11 | **MR. ALTMAN:** Okay. |
| 17:24:44 | 12 | **THE COURT:** And then I wanted to hear any further |
| 17:24:47 | 13 | argument on that? What time is that detective going to testify? |
| 17:24:56 | 14 | **MR. ALTMAN:** It depends. I would venture to say that |
| 17:24:59 | 15 | it would probably be either right before lunch or after -- or |
| 17:25:03 | 16 | right after lunch, depending on how quickly things go tomorrow. |
| 17:25:07 | 17 | **THE COURT:** Well, in the ideal world, the direct |
| 17:25:12 | 18 | testimony would end at lunchtime and we would have a chance to |
| 17:25:17 | 19 | hear the arguments while the jury is out. |
| 17:25:21 | 20 | **MR. ALTMAN:** Yes, sir. |
| 17:25:23 | 21 | **THE COURT:** So let's see what we can do about that. I |
| 17:25:28 | 22 | may even, with your permission, delay cross until we have this |
| 17:25:36 | 23 | issue resolved. We will have to work that out. |
| 17:25:42 | 24 | But as far as the 801(d)(2)(E), what is the statement |
| 17:25:53 | 25 | that you think is going to come in and from whom? |

| | |
|---|---|
| 17:25:56 | 1 |
| 17:25:59 | 2 |
| 17:26:04 | 3 |
| 17:26:07 | 4 |
| 17:26:10 | 5 |

**MR. ALTMAN:**  The statement will come in through Michael Martin who is a cooperator.  He will testify, if at all, at the very end of the day tomorrow, so if the Court wants to resolve that at lunchtime or something, we can do that, but I can tell you now what the statement is.

**THE COURT:**  Well, tell me what the statement is.  Who made the statement?

**MR. ALTMAN:**  The statement is made by John Watson, a/k/a Rat Boy, who is the mastermind of the Mayors jewelry store robbery on October 1, 2010.

**THE COURT:**  And how does the statement relate to Mr. *Davis*?

**MR. ALTMAN:**  So the way that the plan to rob the Mayors jewelry store happened was that John Watson recruited several individuals to do the robbery.  One of those individuals was Michael Martin, another individual was Sylvester Fisher, and there were two of Sylvester Fisher's friends.

Before the robbery could occur, one of Sylvester Fisher's friends was arrested and a second one dropped out.  So, John Watson recruited Jamarquis Reid, who is also a cooperator, and Mr. *Davis* to fill in for the two that dropped out and he told Mike Martin, and this is the statement, that Sylvester Fisher's friends had dropped out.  He told them why and he told them that in their place he had recruited Jamarquis Reid and Quartavious *Davis*.

| | | |
|---|---|---|
| 17:27:23 | 1 | He calls them, obviously, by their nicknames, Quat and |
| 17:27:28 | 2 | Poo Poo, and that he had initially not wanted to recruit them |
| 17:27:31 | 3 | because they have their own robbery group and he doesn't want to |
| 17:27:34 | 4 | split the proceeds with them.  But since he had no choice |
| 17:27:37 | 5 | because Sylvester Fisher's friends dropped out, he had to bring |
| 17:27:41 | 6 | them into the fold and that they would be the other two robbers. |
| 17:27:46 | 7 | THE COURT:  Okay.  And your position on this, |
| 17:27:48 | 8 | Mr. Zelman? |
| 17:27:49 | 9 | MR. ZELMAN:  I am not ready to concede that Watson, who |
| 17:27:53 | 10 | is known as Rat Boy, is part of the conspiracy that involved |
| 17:27:58 | 11 | Martin.  So to me it does not seem as if we are talking about |
| 17:28:02 | 12 | the same conspiracy or that this statement is made in |
| 17:28:07 | 13 | furtherance of the conspiracy which is at issue in our trial. |
| 17:28:11 | 14 | MR. ALTMAN:  Well, Your Honor, as to the first point, I |
| 17:28:13 | 15 | don't think -- maybe I didn't make myself clear.  There really |
| 17:28:17 | 16 | can be no dispute that it is the same conspiracy according to |
| 17:28:20 | 17 | the testimony.  Obviously, the jury is free to disbelieve it. |
| 17:28:24 | 18 | But what Michael Martin will testify is that John |
| 17:28:27 | 19 | Watson and he and several others had a conspiracy to rob the |
| 17:28:29 | 20 | Mayors jewelry store, that two of those members dropped out and |
| 17:28:33 | 21 | that John Watson told Mr. Martin that in their place he was |
| 17:28:36 | 22 | bringing in two new individuals, one of whom is Mr. *Davis*. |
| 17:28:40 | 23 | THE COURT:  But let's go back.  This 801(d)(2)(E) issue |
| 17:28:47 | 24 | is relevant only to one count and that is Mayors? |
| 17:28:50 | 25 | MR. ALTMAN:  That's correct, Your Honor. |

| | | |
|---|---|---|
| 17:28:51 | 1 | **THE COURT:** Okay. So that is like the last of the 17? |
| 17:28:56 | 2 | **MR. ALTMAN:** But it is being presented first, Your |
| 17:28:58 | 3 | Honor. |
| 17:28:58 | 4 | **THE COURT:** It is being presented first? |
| 17:28:59 | 5 | **MR. ALTMAN:** Yes, Your Honor. |
| 17:29:04 | 6 | **THE COURT:** Okay. So are you mentioning this statement |
| 17:29:16 | 7 | during your opening at all? |
| 17:29:22 | 8 | **MS. PERWIN:** No, Your Honor. |
| 17:29:24 | 9 | **THE COURT:** Well, let me hear the Government's opening |
| 17:29:28 | 10 | as it relates to this matter as long as the statement itself is |
| 17:29:33 | 11 | not mentioned. Before the testimony comes out, I want you to |
| 17:29:37 | 12 | call my attention to it and, again, we may have to go sidebar to |
| 17:29:43 | 13 | hear a foundation proffer on it. |
| 17:29:48 | 14 | If you prima facie are able to show the elements have |
| 17:29:51 | 15 | been met, then I'll have to make that determination again at the |
| 17:29:58 | 16 | end of the Government's case once all the evidence is in. |
| 17:30:03 | 17 | **MR. ALTMAN:** Yes, sir. |
| 17:30:08 | 18 | **THE COURT:** All right. Then I will see you at nine |
| 17:30:10 | 19 | o'clock tomorrow. I will begin with the preliminary statement |
| 17:30:16 | 20 | of the law and then we will move directly to the openings. |
| 17:30:21 | 21 | How long do you think the Government opening is going |
| 17:30:24 | 22 | to be? |
| 17:30:24 | 23 | **MS. PERWIN:** Probably 20 minutes, Your Honor. |
| 17:30:26 | 24 | **THE COURT:** And defense? |
| 17:30:27 | 25 | **MR. ZELMAN:** 10, maybe 15. |

| | | |
|---|---|---|
| 17:30:29 | 1 | THE COURT:  Okay.  So we should be well into testimony |
| 17:30:33 | 2 | during the morning.  Thank you. |
| 17:30:35 | 3 | MR. ALTMAN:  Thank you, Judge. |
| 17:30:36 | 4 | MR. ZELMAN:  Thank you, Judge. |
| 17:30:38 | 5 | THE COURT SECURITY OFFICER:  All rise. |
| 17:30:41 | 6 | [The proceedings conclude at 5:30 p.m., 1/31/12.] |

7               **C E R T I F I C A T E**

8               I hereby certify that the foregoing is an accurate transcription of the

9      proceedings in the above-entitled matter.

10

11      _01.31.12_ _____       _____

              DATE

12                                       **JOSEPH A. MILLIKAN, RPR-CM-NSC-FCRR**
                                         *Official United States Court Reporter*

13                                       *Federally Certified Realtime Reporter*
                                         400 North Miami Avenue, Suite 11-1

14                                       Miami, FL 33128            305.523.5588
                                                          (Fax) 305.523.5589

15                                       josephamillikan@gmail.com

16

17

18

19

20

21

22

23

24

25

**A**

able 11:24 12:4 13:19 17:14,15 35:20 52:14
abortion 8:4 35:20
about 4:5,6,12 7:7,9,18,23 10:4 13:11 14:15 16:8,13,16 17:3 19:18,19 23:16 30:16 33:9 37:5,5,25 38:16 38:19,25 39:9,23 40:2,20 41:6,13 42:4,18,23 43:13 44:12 47:15,21 48:2,21 49:5,21 51:11
above-entitled 53:9
absolute 43:22
acceptable 44:16
accessible 7:19
according 28:15 51:16
account 20:16
accurate 44:4 53:8
acknowledge 48:6
acknowledging 48:2
acquired 16:3
across 44:11
act 6:10,16 33:21 35:2 38:7 42:25 48:9 48:15
activity 41:18
actual 14:2 24:20
actually 11:2,7 16:13 21:18 22:22 24:23 32:17
adding 41:3
addition 18:22 32:8
address 5:23 6:16 8:8 14:22 26:23 27:7 40:6 43:9 45:2
addressed 4:11
adequate 35:24
adequately 20:16
admitted 22:19 31:25 32:6
affected 4:10
affidavit 12:18
after 16:14 19:23 22:19 49:15,16
again 7:22 22:8 28:20 35:16 37:1 42:6 43:7 52:12,15
aggregation 8:7 38:18
ago 29:17 30:23
agree 6:20,23 7:13 35:5 43:1,5
agreed 9:4 47:1,7
agreement 47:13,23
ahead 16:23 41:14
AIDS 8:4
aimed 29:20
Airlines 22:11
akin 7:5 35:25
ALAN 1:10
Alhambra 1:17
alias 33:11,12,17
Alito's 4:16 7:16
allow 8:7 45:11,14 46:15
allowed 39:9
allows 43:2
alluded 9:25 13:11
alone 6:24
already 41:15
although 3:22 6:20,23 43:10
Altman 1:13 5:1 8:16 10:7 14:17,20 14:24 15:2,6,9,15,19,21,23 5:6,11,12 16:17,21,24 17:3,21 18:3 19:23 20:20,23 21:16 22:1,22 23:6,11,15 23:20,23 24:3,7,9,13,17,23,2 5:5,22 25:14,25 26:15 27:2,9 28:1 29:10 29:13,24 30:8,20,23 31:1,21 32:14 37:17,23 38:2,5,9,14 43:14 44:18 44:19 45:25 46:21 47:16 49:1,11,14 49:20 50:1,8,13 51:14,25 52:2,5,17 53:3
Altman's 5:11,20 29:17 39:12 41:21
always 27:12 31:3 42:17
AMANDA 1:14
amenable 47:10
Amendment 3:23 4:11,19 5:7,9 6:1,2 31:23 34:12 35:4,8 36:6,13 38:24 40:25 42:13,16 44:4 45:9
AMERICA 1:4
American 22:11
among 12:25 18:15 22:21 29:6
analogous 37:14
analogy 35:24
analysis 6:24 7:13 32:13 33:20 37:19 39:13 41:22 43:25 44:4 46:14
analyzed 40:16

analyzing 3:23
angle 22:6
another 6:4 18:20 30:5 40:21 43:4 50:16
answer 24:18 34:17
anybody 32:4 37:24 48:18
anymore 42:5,7
anything 20:2 35:6,17 44:18 46:11
anywhere 17:21 29:2
apologize 18:3 24:25
apparently 42:17
appear 11:6
appearances 1:12 46:18
appellate 6:3 43:11,12,16
application 5:5,22 6:2 9:9 10:2 12:21 15:24 16:15,18 25:16 33:25 34:3 46:3 49:13
applications 34:11
applied 9:23 12:8 20:9 33:20
applies 10:1
apply 4:23 5:25 19:24 32:3 33:23
appropriate 42:25 46:3,8
aptly 6:4
area 13:24 29:3 30:3 40:1 44:2
areas 7:7
arena 22:10,11,13,17
argument 5:19 8:10,13 41:13 43:6 46:3 49:13
arguments 31:20 49:19
arise 34:21
around 13:1
arrest 14:14
arrested 18:13,14,18 19:8 23:4 32:10 50:19
arrests 8:17,19
articulable 33:25
aside 33:18
asked 17:17 19:18,19
asking 4:24 12:9 22:19 25:9
aspect 12:14 30:5 38:8
associated 40:24
assuming 5:16 14:7 22:8
attempt 45:12
attention 24:15 26:1 52:12
attorneys 16:12
August 12:10 20:13 21:1 28:4
AUSA 9:12 13:4
authenticity 47:17
authority 6:7
authorization 10:2 48:24
authorized 48:6,8,15
authorizes 9:15 33:23
authorizing 20:10
available 13:25 14:7,10 21:13
Avenue 1:22 12:5 53:13
avoided 6:9
aware 12:20
away 13:25 14:9,10,11 26:11 28:18
azimuth 28:25,25 29:25
A.U.S.A 1:13,14
a/k/a 50:9

**B**

B 39:19
back 11:11 14:14 16:2 18:4,15 19:13 22:20 23:9 38:24 39:1,20,23 40:2 47:8 51:23
background 19:21
bag 36:21 37:1
bank 38:25
banking 36:9
banks 41:4
based 9:24 19:2,7,8 34:3 45:15,21 46:6
basis 38:19 41:8,9
Beach 22:14
bear 23:25 39:16
beauty 18:6,23 19:1,5,14
Beckett 10:17
become 4:9
beeper 36:22
before 1:10 5:16 8:13 13:10 15:23,25 16:5,18 21:14 33:22 45:18 46:1,23 47:2 49:15 50:18 52:11
begin 52:19
beginning 25:23 26:4
being 4:14,21 7:15 12:11 14:19 15:17

20:5 23:13 24:20,21 27:22 28:24 33:16 34:5 35:23 39:5 43:16 44:14 44:14 52:2,4
believe 9:10 15:11 16:8 17:21 19:12 20:4,5 28:21 34:2,4,9 44:3 45:22 46:23
beside 13:6
between 9:19 10:5 12:9 22:17,21 35:15 39:13
big 17:7
bill 36:12
binding 34:19
bit 18:4
block 14:9,11
blocks 14:9 28:18
blood 18:15,17,25,25
blotch 18:17
blurred 25:13
booth 4:4 44:1
both 8:21 9:1 10:15 15:25 16:10,12 19:5,13,19 33:7
bought 42:8,10,14
bounce 11:12
bounced 28:6,7
bouncing 21:10 22:10 28:19 30:12,15 31:24
box 36:21
Boy 50:9 51:10
briefly 44:19
bring 20:1 24:15 51:5
bringing 51:22
building 14:5,6,8
business 11:9 36:4,5 37:8,22 47:18
buying 41:15
buys 41:14

**C**

C 53:7,7
Caesar 28:14
Caesar's 28:5,11 29:21 30:4
call 9:4,16,17,22 10:23 11:1,1,2,3,13 11:14,15,17,21 12:17 13:24 14:5 20:3 21:14 22:9,24 23:1,18,24 24:1 26:5,5,6,8,10,12 28:7,16,22 41:1,24 52:12
called 3:3 7:4 10:8,9,11 11:7 22:11 22:25 28:6 29:9 33:25 40:25
calling 23:10
calls 7:4 10:13,15 15:9,10,17 16:4 22:20 23:9 24:6 41:7,8,9 51:1
came 19:13 47:4
car 13:16 18:16,23 19:1 34:24 35:2 37:15,15
card 36:9
case 1:3 3:19,20,21 4:12 5:3,4,8,14,25 6:6,8 7:22 8:15,19,24 9:3 10:17 11:8 13:7 20:2 21:9 26:1 28:4 33:3 33:12 34:9,9,16,23,25 35:16 36:1 36:21 40:16 43:7,7,13 46:3,14 52:16
cases 3:23 4:25 5:20 9:11 32:15,16 33:21 38:24 39:17
cause 6:18,19 7:5,11 10:1,1 12:17 13:3 19:4 20:5 34:4 36:5
cell 8:20,21 9:17,17,20,22 10:2,5,12,24 11:2,3,4,5,8,10,12 12:9,15,15,16,21 12:25 13:7,11,20 14:2,15,19 15:3,4 15:5,10,11,16 16:3 20:1,4,10,12,13 20:25 21:1,2,3,5 22:2,12 23:5,9 25:4,17,23,24 26:4,8 32:10,11,18,19 32:21,23 33:2,10,11,15 35:19 36:10 37:11,20,24 38:1 39:7 40:13,20,21 41:15
cellular 11:2
center 30:2
certain 23:9,18,21 32:22
certainly 4:13 35:22
Certificate 2:3
Certified 1:21 53:12
certify 53:8
chain 16:2 17:24
chance 49:18
change 35:6 36:18
changed 39:25
changes 34:16
charged 19:17
chat 39:19

chief 8:15
child 39:17
choice 51:4
Chop 17:4 19:18
Chop's 17:10
church 44:1
circle 1:17 21:22,24 22:4 27:10 43:20
circuit 6:8 7:1,8 10:17,19 32:16 33:9 33:10 36:3 43:13
circuits 34:10
Circuit's 6:17,19,24 43:8
circumstantial 24:11
cited 6:21 10:18 32:16
cites 34:10
citing 7:22
clear 4:18 6:6 7:2,2,17,17 10:4 29:22 33:22 51:15
clearly 4:6 39:16 42:16
client 5:4,13 48:5
client's 47:3
clinic 8:4,4 35:21
close 11:22 31:10
closer 25:12
closest 28:10
coconspirators 22:25
codefendant 9:3 14:15 25:6
codefendants 8:14 18:16 29:7
colloquially 38:14
colloquy 47:12
column 25:23
columns 25:18,18 26:1
come 8:12 24:16 31:2 49:25 50:1
comes 52:11
comfortable 3:12 46:13
commerce 47:19
commission 34:5
committed 18:8 20:17
communicates 39:19 40:21
communication 42:4
communications 38:7 40:13
companies 40:20
company 25:17 35:12 36:24 37:7,12 37:20,21 38:2 39:7 40:2 45:3
company's 45:4
complete 45:19
completely 6:20 44:3
complicated 31:8
components 31:18
concede 51:9
concept 3:25 5:5
concern 30:18 38:18
concerned 7:18 39:8
conclude 53:6
concurrence 4:15
concurring 7:16,17 8:4
conditional 45:20
conducted 37:3
conference 11:19
confess 18:7
confessed 18:18
confession 19:2
confessional 43:25
confirm 17:14
confused 6:1
congested 13:23
congressional 6:10 33:21 42:24
conjunction 32:11
connection 18:13,14
consented 19:10
considered 4:10
conspiracy 51:10,12,13,16,19
constitutional 36:1
constitutionally 34:7
contact 14:21,23 15:13 16:3 17:13,16 29:14 41:24
contacts 11:5
contemplated 6:17
CONTENTS 2:1
contest 35:9
continue 27:24
conveniently 34:18
cooperating 29:7
cooperator 50:2,20
cooperators 23:11 24:12 30:13
coordinates 13:12
Coral 1:18
corporate 36:2

correct 15:2,6,19 17:15 20:20,23 22:1
  23:20 24:9,13 29:10 37:17,23 38:2
  38:9 51:25
corrected 3:8
correctly 9:11
correlate 24:8
corroborate 17:11,16 24:9,12 31:16
corroborated 19:25
corroborates 29:12
count 13:2 51:24
country 13:1 34:20 36:3 43:12
county 12:2 31:12
couple 14:9 28:9
course 5:15 10:19 11:8 12:11 14:4
  17:18 19:10,16 20:7 22:16 26:9,11
  28:8,17,24,25 31:3 33:3 34:25 35:9
  36:5 37:4,7,22 42:24 44:23 45:12
court 1:1,20 3:1,2,3,5,7,14 4:1,21,22
  4:23,24 5:1,4,10,16,17,24 6:10,12
  6:18 8:9 9:8,14 10:1 11:4 12:20
  13:9,10 14:14,18,22 15:1,3,7,13,16
  15:20,22 16:2,9,16,19,23 17:1,19,24
  19:21 20:18,21 21:15,19 22:18,23
  23:4,8,13,17,21,25 24:4,8,11,14,18
  24:19,24 25:1,12,19,22 26:14,17,25
  27:8,24 29:4,6,11 30:5,17 31:17
  32:9 33:19,22 34:9,16 35:15,25
  36:2,16,19,23 37:13,18,24 38:4,6,10
  39:15 40:7,11,18 41:13 42:21,24
  43:2,7,10,12,23,3 44:17,18,20 45:7
  45:10,25 46:2,9 47:11,14,19,21
  48:7,11,13,15,18,20,2 3 49:7,9,12,17
  49:21 50:3,6,11 51:7,23 52:1,4,6,9
  52:18,24 53:1,5,12
courthouse 1:21 11:22 12:3
courtroom 1:5 3:6 22:9
Courts 42:1,2
Court's 25:25
cover 48:25
covered 24:17
create 41:24
credit 36:9
crime 29:21
crimes 34:6
criminal 8:5 41:18
cross 49:22
cross-examine 49:4
current 4:11 38:23

**D**

D 1:21
danger 8:8
data 7:11,15 8:7 9:18,22 12:9 21:18,21
  22:3 30:21 36:8,9 39:8,14 40:2,24
  41:4 42:18 43:13,14,20
date 10:15 11:16 28:4 53:11
dates 12:10 32:3
Davis 1:7 5:4,12,17,25 8:23,24 9:5
  17:2,22 18:2,21,23 19:3,4,8,9 20:5
  20:7 21:9,12 22:21,25 23:4 26:18
  28:16,18,22 29:9 32:10 35:11,22
  43:7,7 47:9,9,12,22 48:4,5,7 50:12
  50:21,25 51:22
Davis's 23:1 41:18 43:14
day 7:20 36:9 40:10 50:3
days 8:17 16:14,17 18:9
deal 46:4
dealing 7:4
deals 5:4 34:20,22
dealt 10:18
DEA's 37:1
debrief 16:13,19
debriefed 15:25 16:5,24
debriefing 16:9 19:23
December 19:11
decision 6:3,17,20 43:12,17
decisions 43:23,23
deemed 35:3
defendant 1:8,17 3:4,6,8 8:24,25 9:5
  10:19 12:9,11,12 13:8 18:20 30:12
  31:22 32:17,20 33:1,3,14,16 36:7
  36:22 37:1,2,10,11 41:8 45:6,6 47:4
  48:10,13,14,17,19,22
defendant's 8:18 30:12 31:10 34:23
  49:6
defense 8:5 32:25 52:24
degree 27:10

**E**

each 8:22 11:13 21:1,5 47:18
earlier 43:7
early 18:7 19:12
Earth-type 21:8
easier 31:9
easiest 25:5
easily 5:9
easy 7:19 17:11
effect 6:12 34:24 45:20
eight 31:7
either 21:1 32:6 36:24 45:4 49:15
electrical 41:3 36:12
electronic 3:9,25 4:7 39:5
electronics 38:22 40:9

degrees 21:25 22:7,12 26:22 27:10,13
  27:17,18,19,22,2 2 28:23,23 29:1
  30:2
delay 49:22
demonstrate 33:14,15
demonstrated 5:9 31:22 42:1
demonstration 29:17
demonstrative 24:21
denial 45:20
deny 45:10
Department 21:4
depending 49:16
depends 49:14
describe 26:3
described 20:22 48:9,16
describes 6:4
desire 16:10
details 42:22
detective 12:18 49:13
detectives 49:5
determination 52:15
determine 48:8
developing 8:14
development 4:19
device 4:3 10:10 36:20 37:14 42:4,5,8
  42:9,14,15,25 45:3
devices 4:7,8 7:6 40:14 44:13,14
difference 10:5 32:13
different 31:4,11,12
difficult 4:21
direct 24:12 49:10,17
direction 21:21 22:5 27:15 28:24
  29:18,20
directly 52:20
disagree 40:17
disassociated 33:16
disbelieve 51:17
disclosed 19:16
discovery 19:17
discussion 12:25
display 33:24
dispute 51:16
distance 14:1
distinction 35:15
distinguish 9:19
distinguishes 12:14
district 1:1,1,11 4:22 9:12 12:19,22,23
  13:1,2 34:8
districts 4:23 34:10
diversion 3:20
DIVISION 1:2
Dixie 28:17,18
DNA 17:21 18:1,14,23 19:9,11,13
doctor's 43:24
doing 8:1 29:19 31:7 40:11 46:11
done 9:11 12:7 29:16 33:8,23 34:13
  37:7,9,11
downtown 22:15
dozen-and-a-half 4:25
draw 28:25 30:6
drawing 30:24
draws 30:22
drew 7:10
driven 4:2
dropped 50:19,21,23 51:5,20
drug 17:9
drugs 36:21
duration 11:17 20:24 25:15
during 30:14 34:5 37:7 52:7 53:2
duty 33:24

element 27:25
elements 52:14
Eleventh 6:8 10:17,19
ELMO 42:23 24:19 25:5
else's 44:24
emphasis 7:14
emphasize 40:23
end 26:12 31:4 45:14,23 49:18 50:3
  52:16
ended 26:8
ending 25:23 26:8
enforcement 6:3 9:22 35:3,7,7 37:8
English 10:14
enormous 41:4
enough 7:25 46:13
enter 41:23 48:1,4
entered 43:21
enters 3:6
environment 27:13,20
especially 31:9
ESQ 1:17
essentially 12:1 26:21 29:20
establish 32:21
established 4:20
even 13:1,2 17:6,20 30:8 35:10 36:11
  36:15 37:4,5 41:21,25 49:22
event 13:15 11
every 9:12 11:13 12:22,23 22:2 30:15
  32:16 33:2,9 36:3,9 41:3,11
everyone 8:23 17:9
everything 6:20,23 7:23 44:24 48:21
everywhere 8:1
evidence 3:9 5:15,16 22:18 24:11,20
  29:6 30:6,20,25 31:12,23 45:13
  46:3,3,23 52:16
evolution 3:21
exact 14:1
exactly 11:11 23:23
example 11:13 22:8
examples 8:3 35:21
exception 5:21,25 38:7
excluded 43:24 44:1
exclusionary 5:6,22
excuse 3:14 4:5 29:5
exhibits 30:22
expectation 3:19,25 10:20 33:15 36:8
  37:2,10,19,25 39:3 45:7
experience 13:15 31:7
experienced 4:1
explain 25:8 26:23 27:1 29:25 30:10
explanation 46:14 48:21
explicated 46:12
expressed 38:18
extended 42:19 44:23

**F**

F 53:7
facie 52:14
facility 10:14
facing 27:13
fact 30:8 34:4,11 35:10
facts 5:11 8:14,16 15:23 16:3 33:25
  40:17 45:19 46:6
factual 24:14 40:6,8
failure 39:13
fairness 29:24
faith 5:5,21,25 38:7
fake 42:8
false 33:10,17 41:16 42:3
famous 33:13
far 4:22 26:10 40:4 43:11 49:24
farther 13:25 18:4
father 11:14
Fax 1:18,23 53:14
feature 11:18
February 12:8 16:14 20:9
Federally 1:21 53:12
feel 48:20
Ferguson 1:21
few 28:18 39:17
fiction 39:13
fictitious 33:11
fiercely 43:15
file 45:25
filed 9:9 10:23 49:7
filing 9:8
fill 50:21

Finally 11:20
fine 3:11
finger 29:19
fingerprints 41:24
first 4:22,23 8:13 12:20 16:16 17:4,5
  18:17 26:15 31:21,24 34:22 37:13
  46:25 51:14 52:2,4
Fisher 50:16
Fisher's 50:17,19,23 51:5
five 4:6 8:8 16:14 18:9 38:18 39:8 42:6
  44:16,25
FL 1:15,18,22 53:13
Flagler 12:6
FLORIDA 1:1,6
focus 8:10
fold 51:6
following 7:23
force 48:18
foregoing 53:8
foremost 34:22
form 45:23
forth 22:20 23:10 28:20 39:20,24 40:3
forward 5:15 45:12 46:15
found 18:15,23 32:10
foundation 22:20 29:4,6 45:12 52:13
four 18:6,10 20:13 21:2 25:18 26:1,17
fourth 3:23 4:11,19 5:6,8 6:1,2 19:5
  19:15 31:23 34:12 35:4,8 36:6,13
  38:6,24 40:25 42:13,16 44:4 45:9
frankly 9:11 10:9 13:14 30:9,14 31:6
  32:15 35:19
free 51:17
friend 33:2
friends 50:17,19,23 51:5
from 5:13,18 10:10,13,15 12:9,14,15
  12:18,22,23 13:3 14:1 15:9,11,20
  15:22 17:22 18:25 21:21 22:5,12
  23:5,18 25:8 26:11 27:16 31:16,22
  29:7 32:15 33:16 34:10,14 36:17
  39:5,8 42:12 47:11,18 49:25
front 47:15
full 30:19 48:20
fully 6:13 43:6 46:12
full-on 13:4
further 43:9 46:16 49:12
furtherance 51:13

**G**

Gables 1:18
garner 35:2,7
gave 3:19 7:2 32:16 45:2
general 38:10
getaway 18:16,23 19:1
gets 41:5
getting 30:19
giant 27:14
give 14:1,12 16:10 29:12 39:1,2,4 42:3
given 8:3 9:23 21:5 48:20
gives 10:12
glossary 11:25 12:4 21:6 25:3 26:19
  26:20
go 5:15 8:1,2 10:5 12:4 14:14 16:2,23
  18:13 24:14 35:14 38:24 39:4 43:7
  43:24 44:20 45:12 46:15 47:8 49:16
  51:23 52:12
goes 41:11,14 46:3
going 4:17,18 5:11 8:12 13:18 29:22
  30:9,11,13,24 31:6,14 35:25 37:16
  40:4 42:10 43:15 45:10 46:22 47:8
  48:7 49:13,25 52:21
GOLD 1:10
gone 39:23
good 5:5,21,25 32:20 36:17 38:7
Google 21:7
gotten 25:11,14
Government 1:13 5:18 6:8 7:18 30:23
  34:23,24 36:13,20,25 39:9,21 40:9
  40:11 41:5 42:11,18,43 44:8,14
  45:3,11 52:21
Government's 8:15 45:5 46:14 52:9
  52:16
GPS 13:12,14,15,19 14:13 37:5
grab 39:9 42:18
group 51:3
grow 36:11
guess 17:6 34:14
guidance 7:2

guilty 9:7 15:23 16:1,10 45:15
gun 36:21

**H**
half 13:2,3
hand 48:11
happen 26:9 47:1
happened 21:9 50:14
happening 11:7 18:22
happens 24:3
happy 3:17 24:18
having 7:19 30:1 46:16
head 28:21
hear 21:19 49:10,12,19 52:9,13
heard 13:10
hearing 3:8
held 36:1 38:8 44:25
help 8:10
helpful 8:13 22:22 46:13
helps 13:9
highway 26:9 28:17,18
him 8:24 14:25 17:17 23:2,5,6 32:1
  47:13
himself 33:16
historical 9:17 10:24 12:15,21 13:7,11
  20:12 35:16 36:3 38:17 39:13
historically 12:7
hit 17:21 18:1
hole 17:9
home 7:10 43:21
homosexual 41:9
Honor 9:6 12:13 13:5 14:17 15:15
  16:1,7,24 17:21 21:16 22:1,8 23:23
  24:13,25 29:10 31:21 37:23 38:3,9
  44:19 46:21 51:14,25 52:3,5,8,23
HONORABLE 1:10
hood 35:1
hope 13:9
hotel 8:6
hours 7:20
house 36:11,12
hypothetical 45:2
hypothetically 32:9

**I**
idea 38:10
ideal 49:17
identical 25:7
identification 41:16
identified 29:9
identify 18:1
images 39:20
implicated 4:7 18:19
implicating 17:22
important 4:5,12 34:14
importantly 32:1,7
impossible 4:15 27:20
incident 8:19
included 15:13 20:21 25:16
includes 42:19
incoming 10:15
index 12:1
indicate 29:19
indicated 29:18
indication 39:22
individual 41:6,9,11 44:15 50:16
individuals 14:19 15:20 50:15,15
  51:22
individual's 7:10 42:23
indulgence 12:20
inevitable 8:6
information 5:18 7:3,9,19 9:20 10:3,6
  10:22,24 14:18 15:4,7,17 16:6,11
  17:19 20:12,19,21 21:4 23:17 26:1
  32:12,24 35:3,7,11,14,16,19 37:21
  37:25 38:17,19 39:23 40:2,12,14,20
  41:6,19 42:3,12
informed 48:1
infringement 36:13
initial 39:12
initially 17:6 21:11 51:2
insofar 36:5
installs 45:3
instance 11:18 13:17 27:8 32:25 40:1
  41:16
intent 30:6
intention 45:16

interest 5:17 32:21 38:21
interests 3:24 4:7,10 5:12 44:13
interject 21:17
Internet 39:6,17,22,23
interrupt 29:15
interstate 47:19
interval 41:4
intervening 25:2
interview 49:6
intimate 42:22
introduce 32:11 45:13
introducing 30:24 31:1
intrusion 37:3
investigation 34:1
involved 18:10 23:9 35:14 36:19 47:18
  51:10
involving 39:17
irrelevant 5:2
issue 4:14 6:9 13:4 34:20 40:18 41:12
  45:16 46:9 47:4 49:3,3,23 51:13,23
issues 31:19 46:23 49:6

**J**
Jahmal 8:18 15:11 17:4,7,12,13,14,15
  18:14 19:18 20:8
Jamarquis 9:3 18:20 25:6 28:5 50:20
  50:24
January 1:7 16:17,19,25 19:12,15
jewelry 18:9,13 19:6,13 50:9,14 51:20
John 50:8,14,20 51:18,21
Jones 3:19 4:6,12,20,23 7:16 8:8
  12:12 13:13,14 34:15,16,18,22,24
  34:25 35:5,13,13,18 36:14,17 39:25
  40:4,5,8 44:22 45:1
JOSEPH 1:20 53:11
josephamillikan@gmail.com 1:23
  53:14
Jr 1:21
judge 1:11 3:16 6:11,21 9:10,14,19
  10:24 12:7,19 16:8 18:3 20:9 24:3
  25:6,17 26:19 28:2,21 29:5,15
  30:18 33:24,24 36:14 38:13 41:21
  44:12 47:25 49:1 53:3,4
Judges 13:1
juncture 8:13 46:11
jurisprudence 4:1,11
jurors 31:3,8,15 47:3,8
jury 46:16 48:1 49:19 51:17
just 3:11,14,17 4:13 5:24 9:19 10:4,21
  12:21 13:3 14:20 16:7,21 17:24
  20:1,5,7 21:17,22 25:4,5,8,9 26:3
  26:17 28:2,21 29:14,15,17 30:9,11
  30:22 31:8 33:9 34:4 36:15 38:23
  39:9 40:16 42:17,18 44:2,19,20,22
  47:3,12
Justice 4:11 5:16 7:16,17,21 8:3 34:18
  35:3,21 44:25
Justices 4:6 8:8 38:18 39:8 42:7 44:16
  44:25

**K**
K 1:13
Karo 36:16 45:1
Katz 3:24 4:2
keep 41:3 42:11
kept 32:23,24
kind 4:5 21:9 22:10 10:22 25:15 28:1
  29:22 38:14
kinds 8:6
knew 19:15
Knotts 36:16,25 45:1
know 4:25 6:15 7:23 8:2 17:6 18:24
  19:18 22:7 29:21 36:11 42:8 43:3
  43:11 44:20 45:21 46:7,21 48:21
  49:7
knowledge 48:2,3
known 3:22 51:10
knows 8:23 36:19 41:6

**L**
language 7:1,8
last 4:13 25:18 39:10 49:3 52:1
later 18:9 19:14,25 26:10 46:17
law 3:20,21 4:19,19 6:1,2,2 9:22 34:20
  35:2,6,7 36:17 37:8 38:24 39:25
  45:22 46:15 52:20
lawyer

8:5 48:3
leader 17:8
leading 4:3
learn 7:25 38:20 39:10 42:22
least 42:2 43:17 46:15
leave 41:25 44:20
left 26:21 28:3
Legally 31:19
length 42:19
lengthy 7:20
lent 33:11
less 21:25
let 11:10 14:22 16:2 18:5 25:20 39:15
  40:23 52:9
let's 14:14 16:16 27:24 32:9 49:21
  51:23
lies 38:21
lie 42:23
light 38:24
like 3:10 12:6 22:24 28:1 32:12 33:9
  34:11 47:2 52:1
Lil 33:13
Limine 49:8
limited 48:8
line 7:10
lines 30:6
list 14:21,23 15:13 16:4 17:13,16
  29:14 41:24
little 18:4 21:7 25:12,20 28:5,10,14
  29:21 30:4
live 38:22
living 38:15
locate 40:14
located 23:25,25 23:21 24:5 38:19
  3:9 7:9 8:7 11:10,24 14:1
  23:2,14 28:10 36:19,19 38:17 39:8
  40:22,24 42:11,18 43:13,14,20
locations 20:6
logical 3:21
long 7:25 41:1,11 44:9,15 52:10,21
longer 44:16
long-term 38:19
look 22:24 29:14
looking 35:1 41:7
looks 21:4,6 28:1
lot 8:11 32:15 33:1,8
lots 15:15 34:10,10
lover 41:9
lower 42:2
lunch 49:15,16
lunchtime 49:18 50:4

**M**
made 7:17 11:14 15:17 16:4 23:18
  24:1 28:6,13 32:20 40:13 41:1 50:7,8
  51:12
Magistrate 9:9 12:22 13:1 33:24
Magistrate's 13:2
mail 11:19
maintained 36:4
majority 34:19
make 11:1,2,21 26:10 27:10,23 32:13
  32:23,25 45:1 51:15 52:15
makes 6:6 7:16 28:16
making 14:5 21:14 22:9 23:9 29:23
man 18:12
manner 35:17
manufacturer 42:9
many 4:23 9:11 13:10 31:9 44:8
map 11:24
maps 21:7,8
marijuana 36:11
Martin 8:18 9:7 15:24,25 17:4,7,15
  18:12,14,17,18 19:18 20:8 21:9
  22:21 24:1 26:17 50:2,16,22 51:11
  51:18,21
Martin's 9:1 15:11 17:12,13,14 19:2
Massachusetts 34:8
mastermind 50:9
match 18:24 19:13
matched 18:17
matter 37:6 38:16 41:14 42:13 52:10
  53:9
matters 38:12 46:11
may 5:22 19:9 22:22 25:5 36:21 46:21
  46:24,24 49:22 52:12
maybe 4:25 6:9 14:9 28:25 30:20 31:3

51:15 52:25
Mayors 18:9,13,25 19:5,13 50:9,13
  51:20,24
McAliley 9:10,15 20:9 25:17
mean 21:22 28:17 43:24
meaning 3:19,20 30:4
means 10:14 18:3 26:4 29:2 30:2
mechanical 4:3
members 51:20
memorandum 6:21 7:22
men 18:6,11
mentioned 26:20 34:19 52:11
mentioning 52:6
messages 39:23
met 52:15
metallic 27:14
MetroPCS 11:9,9 12:1 13:21 25:3,8
  27:23,25 27:28 15
MetroPCS's 11:9
Miami 1:2,6,15,22,22 12:5 22:10,14
  22:17 53:13,13
Miami-Dade 12:2 21:4
Michael 1:17 18:12,17,18 19:2 50:1
  50:16 51:18
microphone 3:11
middle 27:18,21
might 26:10 27:14,15,16,17 41:22
Mike 50:22
Miller 36:1
MILLIKAN 1:20 53:11
mind 7:2
minute 3:5 41:3,11
minutes 26:10 41:3,15 52:23
miraculously 33:1
mistaken 19:12
mistrial 45:11
misunderstanding 30:20
modern-day 40:9
moment 9:19 16:7 26:23 30:23 33:18
  41:2
moments 29:17
monitoring 4:1 37:15
months 39:11
more 6:4 7:5 25:20,21 35:24 41:6
  43:22 46:11
morning 53:2
most 5:1 21:13 32:1,7 34:14
motel 13:18
mother 41:8
motion 1:10 3:8 6:6,21 10:18 13:12
  19:10 31:20 43:18 45:11,15,21 49:7
motions 46:4,7,16
move 15:22 25:12 28:12 52:20
movement 40:10
moving 34:14
much 4:1 7:14 13:23 31:9 35:25 38:20
  41:6,10
must 4:10 11:2 32:17,20
myself 51:15
mystery 31:4

**N**
name 14:23,24 42:8
named 18:12
names 15:13,15
narrow 34:20
nature 7:14
near 23:21
nearest 11:2,4 13:21,22,23 14:10
  21:12 23:2 30:15
necessarily 7:13 13:19 30:21 35:19
necessary 5:16 16:10 46:5
need 5:10 7:23 12:17 43:9
needed 20:2 48:21
needs 29:16 47:4
neutral 33:24
never 7:1 31:5,24,25 34:19 35:10 47:1
new 3:19,20 4:9,19 7:22 38:22 45:15
  46:10 51:22
next 12:3 19:22,23 28:9,12 33:19
nicknames 51:1
night 28:4
nine 31:7 46:19 52:18
nobody 39:1
none 19:16 36:15
North 1:22 12:5 53:13
Northeast 12:5

**nothing** 44:23
**notion** 3:24
**November** 18:12
**nuances** 24:15
**number** 8:22 9:1,2,4 10:14 11:4,5
14:20,23 17:4,10,12,15,18 20:8,23
20:25 23:1,9 26:22 29:8 46:8
**numbers** 7:4 8:22 10:21,21 12:2 19:19
20:11,12,24,24 25:4,10,10,15,15
41:24
**numeric** 7:3
**nutshell** 5:24
**N.E** 1:14

---

**O**

**oath** 48:7
**object** 27:14 32:17 36:20 44:24
**objects** 37:3
**obtain** 42:4 43:3,14
**obtained** 5:13,18 7:6,12,15 20:18,21
23:5,17 36:4 42:12
**obtaining** 6:25 7:9
**obviously** 9:6 10:10 11:10 14:7 19:4
20:4 22:4 23:2,3 27:9,20 31:25
46:21 51:1,17
**occur** 50:18
**occurred** 23:22 28:13 45:8
**occurs** 28:14
**October** 12:10 18:7,9 20:13 21:1
**off** 11:12 21:10 22:10 28:6,7,20,21
30:12,15 31:4
**offering** 24:4
**office** 8:5 43:24
**officer** 3:1,3 6:3 53:5
**officers** 4:2
**Official** 1:20 53:12
**often** 44:9
**oftentimes** 23:1
**Oh** 3:14 15:15 19:24
**Okay** 15:16 16:2 17:24 19:21 23:17
24:14 26:14,25 30:17 37:18 38:10
40:18 49:9,11 51:7 52:1,6 53:1
**older** 17:8
**once** 5:6 52:16
**one** 3:23 6:3 9:15 13:10 14:15 16:14
16:16,20 17:22 18:19 22:25 24:20
29:8 30:1 32:20 34:11 41:14 43:3
46:7 49:4 50:15,18,19 51:22,24
**one-hour** 8:5
**ongoing** 34:1
**only** 5:3,19 8:21 10:1 21:12 32:2,4
33:4 34:2,7 43:11,16,16 51:24
**onto** 34:23 35:2
**on-duty** 9:9
**opening** 52:7,9,21
**openings** 52:20
**operator** 17:9
**opinion** 7:16,17 8:4 34:19 45:18
**opinions** 4:16 36:16,18,19
**order** 6:18 9:14,24 10:23 11:1 12:8
19:24 20:10 25:9,16 26:2 33:20
46:9
**organization** 17:8
**Orlando** 18:10,25 19:6
**other** 6:9 9:11 10:6 15:4,7,13 16:4
18:19 21:15 22:14 23:10,14 24:14
33:9 34:10,10,13 37:9 51:6
**others** 51:19
**other's** 8:22
**out** 8:12 10:21 11:24 16:22 20:12,24
21:7 24:16 25:10,15 28:2 39:16
49:19,23 50:19,21,23 51:5,20 52:11
**outgoing** 10:15
**over** 7:20 21:3 32:17 36:22 39:17,22
41:11 42:19 44:15 47:9,12
**overall** 7:18
**overrule** 45:1
**own** 31:14 51:3
**owned** 32:6 33:4
**o'clock** 46:19 52:19

---

**P**

**Page** 2:2
**Pages** 1:8
**paint** 19:2
**paper** 43:15

**part** 5:1 10:18 31:2 51:10
**participated** 18:18
**particular** 10:14,16 11:13,24,25 13:16
13:17 20:25 21:5 22:7 24:10 27:5
27:15 28:3,10,23 32:3 36:12,20
40:21
**particularly** 44:6 46:13
**parts** 24:20,23 25:1
**party** 39:2 40:13 42:12
**pen-register** 7:6 9:16 10:9,11,12
20:11 25:10
**pen-registers** 10:20
**people** 14:24 18:19 27:1 44:5
**percent** 22:4,5
**perfectly** 48:4
**perhaps** 4:22 5:9 41:25 43:16,24,25
**period** 7:20 20:13,15,16 41:12 44:15
**periods** 42:19
**permission** 43:3 49:22
**permitted** 49:4
**person** 7:20,23 11:1 13:18 14:2 21:3
22:16 30:11 31:25 38:19 39:19,19
39:20 41:14 48:5
**personal** 34:23
**persons** 8:20
**person's** 39:19 43:21
**Perwin** 1:14 33:8 52:8,23
**phone** 4:4 8:22 9:1,2,17,20 10:13,14
10:16 11:2,3,3,4,5,6,8,10,12,14,15
11:15,20,24 14:2,15 15:3,4,10,11,16
17:3,5,10,12,13,14,18,1 8 19:19,20
20:4,10,25 21:1,2,12,13,23,24 22:2
22:3,12 23:5,6,9,12,18 24:2 25:4,17
26:8 28:6,7 29:11,13 30:12 31:4,10
31:24 32:1,3,6,10,11,19,22 33:2
33:5,5,10,11,12,17,1 7 34:5 35:11
36:10 37:10,11,20,24 38:1 39:7
40:14,20,21 41:17,18,20,23,23,25
**phones** 8:20,21 14:19 15:5,7 16:3 20:1
20:13 21:10,15 23:10,14 32:18
41:15
**physical** 5:13 42:11
**pick** 20:3
**picture** 30:19
**Pizza** 28:5
**place** 7:14 13:16 21:5 26:5 33:21 44:6
44:8,9 50:24 51:21
**placed** 7:4 33:22 35:1 36:24
**places** 11:3 31:11 44:5,12,13
**placing** 36:19 44:24
**Plaintiff** 1:5
**plan** 50:13
**planning** 32:4
**plea** 15:23
**plead** 16:10
**please** 3:2 31:16
**pled** 9:7 16:1
**point** 3:18 13:6 15:22 17:19 22:19
25:25 29:18 31:15,21 33:20 35:13
37:13,19 38:4,6 44:11 51:14
**Police** 31:4
**Poo** 51:2,2
**pornography** 39:17
**pose** 39:15
**position** 4:21 5:11 6:13,15 31:19
38:12 46:14 47:2 51:7
**positive** 19:13
**possessed** 32:7 33:5,5
**possession** 32:9 34:16,24,25 45:4,5
**possessory** 32:21
**possible** 27:12
**post-arrest** 49:6
**post-trial** 46:4
**precautions** 32:22
**precedent** 6:7
**precise** 13:13
**precisely** 22:16 33:23 34:13
**preeminent** 36:16
**prefer** 46:2
**preliminary** 41:14 52:19
**prematurely** 45:17
**prepared** 5:15,22 6:16 24:22 40:12
42:1 43:18 44:7 47:7
**present** 29:7 35:18
**presented** 46:7,16 47:3 52:2,4
**preserves** 46:6
**presumably** 11:21 32:2
**pretty** 10:25 36:16

**prevalent** 4:8
**prevents** 5:21
**previously** 20:22
**pre-Jones** 38:15 42:6
**prima** 52:14
**prior** 3:20,21 4:13 6:7 43:23
**privacy** 3:19,25 4:7,10 5:12,17 7:7,7
10:20 33:15 36:8 37:2,10,19,25
38:20,25 39:3 40:1 41:19,23 42:3
43:22 44:13 45:7
**private** 32:23,24 35:12 36:4,7,24 37:7
44:2,6 45:3,4
**probable** 6:18,19 7:5,11 9:25 10:1
12:17 13:3 19:4 20:5 34:4 36:5
**probably** 24:7 17:26:12 33:19 49:5,15
52:23
**problem** 7:18 39:12 40:8 43:10
**problematic** 6:14 43:5
**problems** 41:5
**proceed** 3:15
**proceedings** 53:6,9
**proceeds** 51:4
**process** 42:6
**proffer** 8:14 31:18 45:21 52:13
**proffering** 22:18
**programmed** 41:11
**promptly** 46:19
**proper** 45:12
**properly** 13:5
**property** 3:24 34:23 35:2 44:25
**protected** 40:25
**protects** 42:16 44:5
**protracted** 44:23
**provide** 11:20 20:11 22:3 35:15 37:1
47:19
**provided** 5:1 9:20,21 11:25 13:20 21:3
26:2,20 34:9,11 35:11,12,21 36:1
37:8,11
**provider** 5:14,19 10:13 11:9 20:10
39:6,18,22 40:13
**providers** 9:17 39:6
**provides** 12:16 22:4 25:17 36:8 45:5
**providing** 36:22
**provision** 10:1,1
**provisions** 9:12
**public** 36:9
**pull** 16:21
**pulse** 10:13,13
**purchase** 41:17
**purpose** 3:8 23:13 30:24 48:8
**pursuant** 9:8 10:23 20:10 33:20
**put** 17:24 22:22 29:15 38:14 45:23
47:25 48:7
**puts** 7:14
**putting** 33:18 37:14
**p.m** 3:6 28:5,14,16 48:13 53:6

---

**Q**

**Quartavious** 1:7 8:23 19:3 50:25
**Quat** 8:23,24,25 9:2,4 14:23 15:1,9,11
15:14 19:15,17,19 23:10 29:9 51:1
**Quat's** 17:17 23:12
**query** 21:17
**question** 12:13 17:20 34:15 49:2
**questioned** 43:19
**questions** 24:18
**quickly** 49:3,16
**quite** 43:1,5
**quote** 45:7
**Q-u-a-t** 14:24

---

**R**

**R** 53:7
**raise** 5:20 36:6 48:11
**raised** 4:14 31:20
**raises** 34:15
**random** 23:1
**randomly** 20:6
**rapper** 33:13
**Rat** 50:9 51:10
**rather** 5:9 7:14 27:22
**rationale** 32:14
**reach** 29:9
**read** 4:15 40:4 43:6
**ready** 3:15 51:9
**real** 5:3
**Realistically** 35:24

**reality** 12:19 36:14 37:6 38:21
**realize** 3:16 6:4
**realizing** 4:16
**really** 8:1 9:15 13:6 17:7 32:4 35:5,6
39:2,16 44:3,11 51:15
**realtime** 1:21 9:22 10:2,5 12:12,15,16
12:25 13:7 35:14,15,17,22 37:5,14
37:15 38:17 39:14 53:12
**reason** 20:15 32:20
**reasonable** 10:20 32:22 33:15 36:7
37:2 45:7
**reasons** 45:17
**receive** 11:1
**received** 10:8,22 14:19 15:18 16:4
23:24,25 26:5,6 28:6
**receiving** 11:4,5
**recent** 34:15
**recognition** 3:18 4:9 38:21
**recognize** 4:6 6:15,24 39:13 42:2,17
44:7
**recognized** 5:24 6:17 43:11,22
**recognizes** 5:17
**recommended** 47:6
**reconvened** 3:7
**record** 11:20 13:14 28:1 29:16,20,22
47:11
**recorded** 11:23 22:24 38:1
**recordings** 47:17
**records** 5:13 11:6,9,12,15 13:20 21:2
22:23 24:4,25 25:4,6,7 26:15,16
27:1,4,19 28:16 29:11 30:3 31:2,7
31:15 32:3 36:2,4,9,10,10 37:20,21
38:1,17,25 40:19
**recovered** 31:24 35:11
**recruit** 51:2
**recruited** 50:14,20,24
**referred** 8:23
**refers** 8:24,25
**registered** 11:15 21:13 23:10 33:10
**registering** 33:17
**regular** 11:8 36:5 37:7 41:8,9
**Reid** 9:3,4,6 18:7,20 19:25 20:7 21:10
25:7 26:6,11,17 28:6 50:20,24
**Reid's** 27:4
**reiterates** 46:6
**relate** 50:11
**relates** 52:10
**relating** 49:6
**relation** 5:4
**relative** 16:5 17:1 21:5 23:14 24:5
40:15 41:20 42:25
**relatively** 8:16
**relevant** 5:19 32:2,7 33:6 51:24
**relied** 6:25
**rely** 42:7
**relying** 9:12
**remains** 12:24
**remember** 9:10
**remembers** 49:7
**rep** 13:21
**report** 16:21
**REPORTED** 1:20
**Reporter** 1:20,21 53:12,12
**Reporter's** 2:3
**representative** 27:3
**request** 47:11
**requesting** 40:12
**require** 7:4 12:21 13:3,4 36:5
**required** 7:11
**requires** 34:13
**rerouted** 13:25
**research** 33:8 43:17
**resolve** 50:3
**resolved** 13:5 49:3,23
**resort** 6:3
**respect** 3:25 7:9 32:18 33:7 42:13
43:13 44:13
**respond** 44:20 46:9
**response** 12:13 31:19 45:25
**result** 26:2
**revealed** 8:21
**right** 3:7,15 4:8 11:11 14:3,8,22 15:5
15:14 20:18 21:16 23:8,13,19,23
24:2 25:2,22,25 27:9 31:17 39:22
40:1,4,7 41:19,22 42:3,13,21 45:10
48:11,23 49:15,16 52:18
**rise** 3:1 53:5
**rob** 50:13 51:19

robbed 18:6,6,10 28:5
robber 19:5,16
robberies 17:22 18:8 20:1,6,17 21:6
23:16,16 31:10,11 47:18
robbers 17:23 51:6
robbery 18:10,13,16,19,2,4 21:8 23:21
28:13,14 30:13,14,15,15,1,6 33:3
50:10,15,18 51:3
roof 14:6
room 39:20
routine 7:3
ROY 1:13
RPR-CM -NSC-FCRR 1:20 53:11
rule 5:6,22

___ S ___
S 1:10
salon 18:6,23 19:1,5,14
same 9:2 41:17 51:12,16
sanctioned 6:7
satisfied 48:23
save 41:5
saved 14:21,23
saw 16:3,4 17:12
saying 17:11 39:25
says 45:1
Scalia 34:18 35:3
scenario 41:17
scene 29:21
Scola 44:25
search 8:21 13:4 19:7
searched 8:19 44:14
seat 18:15
seated 3:2,10
second 3:14,24 9:17 10:22 11:4 12:14
16:14 17:17 18:25 23:25 24:21
26:19 35:13 37:18 49:1 50:19
secreted 42:15
sector 21:23 22:3,4 26:7,13,22 27:6,16
27:19,22 28:22,23 29:19 30:3,25
31:1
sectors 22:2 27:11,14 29:1 30:1,1 31:2
31:14
SECURITY 3:1,3 53:5
see 4:13 5:10 6:16 8:14 12:4 13:19
22:23 25:8,18,19 26:6 28:2,8,8,12
28:15,19 46:3,18 49:21 52:18
seem 51:11
seemed 20:15
seems 46:12
seen 9:8,14 33:1
seized 44:14
seizure 38:17
selected 20:15
SENIOR 1:11
sense 13:13 27:23 40:6
sent 25:9
sentences 44:22
separate 17:22 18:15 21:2
separated 20:2
September 18:5 21:1
service 5:14,19 39:6,6
set 15:23 18:25 26:15 45:19
seven 20:16
several 46:23 50:14 51:19
shirt 19:1
short 8:5
show 12:17 15:8 21:8,11 22:5,20 23:13
23:15 24:5,19 25:5 28:2 33:11
52:14
showed 13:14 15:3,17 21:21 34:2
43:17
showing 13:3 31:17
shown 9:2 14:18 37:21
shows 21:12,18 23:3 28:13
side 22:15
sidebar 52:12
sign 47:23
signal 21:21
signals 10:13
signature 47:3
signed 9:15 25:17 47:8,22
significance 5:3 12:10 30:19
significant 7:21
significantly 21:25
simple 10:25
simply 7:3 34:21 41:7 46:25 47:25

since 4:2 8:11 35:4 47:14 51:4
single 33:2
sir 3:15 8:16 10:7 15:21 21:19 24:7
46:20 49:20 52:17
site 9:18,22 10:2,5,24 12:9,15,15,16,25
13:7,11 20:12 21:3 31:4 35:19
sites 12:21
situation 36:11 37:14 45:6,24 47:24
situations 33:13
six 20:23
side 28:13,15
slides 28:9,12
slightly 13:25
small 41:4
Smith 8:17,25 9:7 15:24,25 16:24 17:1
18:7 19:16,17,24,2,4 20:8 22:21
24:1 26:17 28:19
Smith's 9:2 15:10 17:16 19:20 21:10
29:13
society 44:7
some 4:2 5:10,21 6:9,17,18 8:10 11:22
13:3,4 22:19 25:20 41:18 46:10
somebody 20:3 30:22
someone 8:22 44:24
someone's 40:9
something 4:14,16 12:6 19:25 29:16
39:2,15 40:5 41:10 42:1,3 43:9 45:4
45:16 50:4
sometimes 13:22,23 22:2 24:3
somewhere 26:10 28:24 30:3
sorry 3:16 19:6 21:20,24 24:24 28:6
30:1 36:7
sort 14:12 21:7
Sotomayor 7:21 8:3 35:21
Sotomayor's 4:15 7:17
sought 8:8
sounds 33:9
SOUTHERN 1:1
speak 3:11 7:7 17:7
special 11:18
specific 13:16 14:12 33:25 34:20
40:17,24
specifically 21:12 32:18 36:14 45:1
specter 36:6
splatches 18:15
split 13:2 51:4
stage 30:22 45:11,18,21
stains 18:25
stand 46:24
standard 43:3
standing 31:22 32:14 33:4,14,18
41:13
start 3:17 8:9 27:17,17
started 12:21 26:11
starting 3:18
state 6:1
statement 49:24 50:1,5,6,7,8,11,22
51:12 52:6,10,19
statements 15:23
States 1:1,4,11,20 12:24 34:16 44:17
46:9 53:12
stating 45:17
stationary 26:12
status 47:21
statute 6:24 34:7 43:5,11,14,19
stay 3:10
stayed 44:10
Ste 1:17
step 16:5 17:17 19:22,23 25:2 26:19
still 23:2 26:12 36:17 38:6 44:5,7
stipulate 47:5
stipulation 48:1,4
stipulations 46:25 47:1,7,13,14,16,20
47:22
stop 44:12
stopped 43:20
store 18:10,13 19:6,13 50:9,14 51:20
Stored 38:7
straightforward 8:17 49:2
strategy 31:15
Street 1:14
stressed 7:21
strictures 9:21
strong 19:3
subject 33:8 46:16
submitted 9:24
subpoena 40:12
subpoenaed 26:25 36:12

subpoenas 39:21
subscribed 33:12
subsequently 37:8
substance 19:9
suddenly 4:9
sufficient 31:13 34:12
Suite 1:22 53:13
supermarket 13:18
superpen 23 12:17
suppress 1:10 9:19 10:18 19:10 31:23
34:19 45:11
suppressing 32:3
Supreme 4:1 5:4,24 34:16 35:25 36:2
36:16,23 43:7,23 44:17
sure 5:10,12 7:8 12:19 13:10 15:16
16:23 27:24 30:18 32:23 38:13
39:21 40:5 41:21 47:15
surrounding 21:22
surveillance 47:17
suspect 19:4
suspicion 19:3
swab 19:11
swabbed 19:9,11
sworn 48:12,13
Sylvester 50:16,17,18,22 51:5
synagogue 44:1

___ T ___
T 53:7,7
TABLE 2:1
take 17:14
taken 8:11 16:5 39:5
taking 39:7
talk 16:16
talking 14:15 37:4,5 38:16,25 42:4
47:15 51:11
talks 43:13
target 17:7
technician 24:22
telegraph 10:11
telephone 23:18 29:8 40:24 41:1
tell 4:22 7:23 13:15 14:2 17:1 22:12,15
25:3 35:20 41:10 44:8,9,14 50:4,6
telling 27:21 42:7
tells 7:19 26:21 27:6 41:10
ten 26:10
term 8:5
terms 6:12 40:16 43:22
territory 46:10
testify 13:21 23:11 27:3 30:11 32:17
33:4 46:24 49:5,13 50:2 51:18
testimony 5:10 8:11 24:9,12,16 29:7
29:12 49:10,18 51:17 52:11 53:1
thank 3:2,13 25:13 31:17 45:10 46:18
53:2,3,4
their 8:17,19,20,21 14:21 16:12 19:19
20:1 24:2,4 27:1 29:11 37:22 50:24
51:1,3,21
themselves 24:21
theory 33:15
thing 13:10 17:5 25:15 32:4 49:1
things 8:6 9:15 10:8 17:3 32:22 36:15
49:16
think 3:18,22,4 12:14,21,24 5:8,19 6:6
6:14,25 7:2,13 8:9,12 13:13 16:8,13
24:17 27:16 29:16,24 31:7,8,9,12
32:15,15 33:7,18,19,22 34:17 35:9
35:13 36:2,25 38:10,14 39:12 43:9
44:7,22 46:2,3,8 47:4 49:2,25 51:15
52:21
thinking 8:2 44:12
third 6:17,19,21,23 7:1,8 9:3,20 12:14
27:5,25 28:1 30:22 38:4 39:2 40:12
42:12 43:12,25 49:3
third-party 40:19
thought 39:1,16 42:6
three 16:17 18:19 22:2 24:23 25:1
29:1 30:1 39:10,10,11 44:22
three-way 11:19
through 7:6 17:12 24:16 29:14 39:19
40:12,13 43:15 50:1
tilted 27:15
time 7:20 9:6,10 10:15 11:16,25 13:16
16:9 19:18 20:16,24 21:1,5 23:7,16
24:6,10 25:15 26:4,5 27:5 28:3,3
33:2 37:3,9 40:22 41:2,12 42:19,20
43:18 44:15 45:7 46:1,17 49:13

times 13:10 30:14,16 31:12 32:1,4,7
33:1,6 44:9
today 11:14 12:24 34:3 36:17 43:8
together 17:25 30:14
told 17:10 42:9 50:22,23,23 51:21
tomorrow 46:19,24 49:5,16 50:3
52:19
tonight 44:11
top 14:6 28:3,21
towards 39:20 30:4
tower 11:3,3,4,5,12,21,22,2,3 12:3,4,5
12:5 13:21,22,23,25 14:3,6,7,8,10
20:25 21:5,8,13,13,23,2,4 22:2,5,8,9
22:10,24 23:2,18 24:5 25:4 26:6,7
26:13,22,24 27:4,5,6 28:7,9,9,16,20
28:22,23
towers 11:10 12:22 28:10 30:15 31:10
31:12 40:15
toy 42:10,14
trace 9:16 10:9,12 20:11 25:10
traces 10:21
track 7:25 40:9 42:11 44:8
tracked 12:11 35:23
tracker 13:14,19 14:13 34:25
trackers 13:15
tracking 4:7,8 5:18 7:19 13:8 35:14,16
35:17 35:1,4 42:8,9,15,25 44:23
45:3
traditional 3:23 44:6
traditionally 7:5
traffic 13:24
transcription 53:9
transmits 39:20
transmitted 40:2
trap 9:16 10:9,12,20 20:11 25:10
trespass 3:24 34:22 35:6,10 38:5 45:8
45:8
trespassing 35:2
trial 8:12 13:21 31:15 32:2 45:14,16
48:5 51:13
trials 31:8
triangulation 14:13 37:6
true 6:11 12:23,24 13:20 20:7 21:15
36:15 37:4
try 30:6
trying 6:25 30:9 32:11 40:14,19
turn 39:22
two 3:22 8:18 9:15 10:6,8 14:15,17,19
15:4,7 16:5 17:3,22 18:15 24:20
28:9 36:16 41:3 44:22 50:17,21
51:6,20,22
type 7:11 41:18 42:25
types 10:6
typically 27:9,16

___ U ___
ultimately 18:7 19:7,8
uncertainty 6:1
unconstitutional 38:8
under 9:21 11:20 14:23 31:23 32:14
33:10,12 34:12 37:15 38:7 41:21
43:3,25 48:7
underneath 35:1
understand 12:23 13:9 37:18 38:23
43:6 48:9
understanding 21:18,20 44:4
understood 43:21
uniform 27:11
United 1:1,4,11,20 12:23 34:16 44:16
46:8 53:12
Universal 18:6
unless 5:25 30:22
unquote 45:8
until 16:14 43:6 49:22
upheld 34:7
urban 13:24 27:12,20
usage 6:18,19
USC 9:8
use 3:5 7:6 14:24 22:8 37:25
used 7:1,9 10:10 11:21 12:3 20:5,25
22:3 29:18 34:5 40:21 41:18 42:8
43:14,19
uses 37:24 41:16
using 14:2,7,11 32:5 33:17 39:21 40:9
U.S 1:21 5:3

___ V ___



v 34:16
variety 15:17
various 15:20
venture 49:14
veracity 17:16
verdict 45:15
verify 31:3
very 7:1 13:16 19:3 26:21 27:18 34:20
   35:25 44:19 46:25 50:3
vicinity 23:16
video 47:17
videos 47:17
view 38:23
views 5:12
violation 5:6,8 35:4,7 45:9
virtually 25:7
visiting 35:20
voice 11:19
voluntarily 39:2
voluntary 48:24
vs 1:6

**W**

want 12:16 17:24 24:15 44:11 45:17
   45:25 47:22 51:3 52:11
wanted 3:17 27:10 49:9,12 51:2
wants 33:19 50:3
warrant 13:4 19:7
wasn't 19:17 35:23 44:6
Watson 50:8,14,20 51:9,19,21
way 6:16 8:9 10:24 11:23 17:11,16
   18:24 27:14 29:1 30:23 43:21 46:3
   50:13
Wayne 33:13
ways 3:23
week 4:13
weeks 39:10
well 6:14,22 10:4 11:10 15:3,9,13
   16:12 17:3 18:5 19:8 23:4,11 24:2,4
   24:19 27:8 29:13 30:5 31:1 32:9
   39:15 40:11 47:21 49:9,17 50:6
   51:14 52:9 53:1
went 20:2 44:9 47:9,12
were 5:13 8:3,4,19 10:8 11:13 15:4,9
   15:10,12 17:13,15 19:19 20:17
   21:10 22:20 24:5 32:11,25 36:15
   37:4,5 40:13 41:1,2 50:17
Weston 19:6
we're 3:15 30:19 31:6 38:16 47:15
while 18:22 36:24 49:19
White 4:5
wholesale 8:7
Wilkie 1:21
Willie 8:17,25 15:10 16:24 19:19,23
   29:13
willing 48:4,6
wires 4:3
wish 3:15 46:5
witnesses 46:23
words 22:14 34:13 37:9
work 45:19 49:23
works 10:24 25:9
world 38:15 49:17
wouldn't 35:19,22 42:12
write 45:16,18
writes 35:3
written 45:18,23 46:9
wrong 20:2 43:16
wrote 34:19

**Y**

yeah 15:15 18:3
years 4:2,18 39:11
York 7:22

**Z**

Zelman 1:17 3:10,13,16 6:11,14 9:25
   10:17 13:17 21:17,20 23:24 29:5,15
   30:4,18 31:16 34:15,18 35:5,9
   38:12,13 40:4,8,16,23 41:21 42:22
   43:1,5 46:5,25 47:6,7,9,12,21,25
   48:9,15 49:4 51:8,9 52:25 53:4
Zelman's 13:12 47:2
zero 27:11
zone 43:22
zones 7:7
zoom

25:20,20 28:2

**1**

1 1:1:8 18:9 20:13 28:22,23 50:10
1st 12:5
1/31/12 53:6
10 52:25
10-20896-CR-GOLD 1:3
10:07 28:5
10:31 28:13,16
10:33 28:19
11-1 1:5,22 53:13
111 27:5
120 22:7,12 27:11,11,13
129 26:7,13
15 52:25
17 52:1
1780s 35:4
18 9:8
1920s 10:10
1960s 38:25
1970s 36:17

**2**

2 20:9 26:7,13 27:22
2nd 12:8
20 5:20 28:23,23 29:1 30:2 52:23
201 1:17
2010 12:10 16:25 18:5,9,12 19:12
   20:13,14 28:4 50:10
2011 12:8 20:9
2012 1:7
220 27:8,22
2255 47:4
23 19:11
23rd 18:12
24 7:20
240 27:12,12,17,17
25th 18:5
2703 9:9,13,21,25 10:18,23 11:20
   12:14,15 20:10 25:16 26:2 34:12,13
   35:15

**3**

3 27:16
300 27:19,22
305-834-0304 17:13
305.358.1600 1:18
305.442.0099 1:18
305.523.5588 1:22 53:13
305.523.5589 1:23 53:14
305.961.9435 1:15
31 1:7
31st 16:17,19,25 19:15
33 22:4,5
33128 1:22 53:13
33132 1:15
33134 1:18
360 21:25 27:10,12,17,18
360-degree 29:25

**4**

4th 1:14
4:04 3:6
400 1:22 53:13

**5**

5:23 48:13
5:30 53:6
500 12:4,5
53 2:3
561-767-5642 29:8

**6**

6 20:14

**7**

7 28:4
7th 16:14
711 1:17

**8**

801(d)(2)(E) 49:2,24 51:23

**9**

99 1:14